# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5207 | **DATE** | 1/27/2004 |
| **CASE TITLE** | Roger Fairley, et al. vs. Andrews, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 2/24/2004 at 9:45 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Count Three is dismissed in its entirety and defendant Cook County is dismissed from Counts One through Four. Defendants' motions to dismiss and strike [20-1, 21-1, 22-1, 23-1 and 23-2] are otherwise denied. Parties are granted leave to proceed with all discovery. Discovery must be completed on or before 8/30/04.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 28 2004 | |
| | Notified counsel by telephone. | | | 36 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| RO | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROGER FAIRLEY and <br> RICHARD GACKOWSKI, <br><br> Plaintiffs, <br><br> v. <br><br> SUPT. DENNIS ANDREWS, *et al.*, <br><br> Defendants. | No. 03 C 5207 <br><br> Judge Ruben Castillo |

DOCKETED

JAN 2 9 2004

## MEMORANDUM OPINION AND ORDER

Plaintiffs Roger Fairley and Richard Gackowski, two former Cook County Department of Corrections ("CCDOC") correctional officers, allege that Defendants[1] harassed them and retaliated against them because they spoke out against and attempted to speak out against the excessive use of force by their fellow correctional officers. Defendants have brought four separate motions to dismiss Plaintiffs' complaint, (R. 20-1; R. 21-1; R. 22-1; R. 23-1.), and a motion to strike, (R. 23-2). For the reasons provided below, we dismiss Defendant Cook County from counts one through four and dismiss count three in its entirety. Defendants' motions are otherwise denied.

## RELEVANT FACTS

Plaintiffs Fairley and Gackowski are former CCDOC correctional officers who worked in the Cook County jail. Plaintiffs allege that at the CCDOC training academy they were taught to

---

[1] Plaintiffs have named fourteen defendants: CCDOC Superintendent Dennis Andrews; CCDOC Lieutenant Edward Byrne; CCDOC Sergeant Patrick Loizon; CCDOC Correctional Officers Evan Fermaint, Noberto Bercasio, Fred Coffey, Ronald Prohaska and Gabriel Ochoa; CCDOC Internal Affairs Division ("IAD") Investigators Gregory Ernst, Saul Weinstein and Juan Diaz; Cook County Sheriff's Police Department Investigator Tim Kaufman; Cook County Sheriff Michael Sheahan; and Cook County.

follow a "Code of Silence" that required them not to talk about events at the Cook County jail. Plaintiffs claim that their superiors and fellow correctional officers knew that they would not follow the "Code of Silence" if it required them to condone the excessive use of force by correctional officers.

Plaintiffs both worked in Special Incarceration Unit Two in the Cook County jail. This unit houses inmates who are charged in high-profile cases, considered to be serious escape risks, involved in violence while in jail or are otherwise determined to require special treatment. On July 29, 2000, when Fairley observed a violent incident between Correctional Officers Fermaint and Bercasio and four inmates, he told Fermaint and Bercasio that they should stop beating the inmates because they were going to kill them. Gackowski later observed some of the beaten inmates in the jail's emergency room. After this incident, Superintendent Byrne told Fairley not to write up a report because investigators would take statements from everyone involved in the incident, but an investigator never took Fairley's statement. Three of the inmates involved in this incident subsequently filed a lawsuit ("the Fields Litigation") against various CCDOC employees. After the initiation of the Fields Litigation, Plaintiffs allege that they informed their fellow officers that they would tell the truth if asked about the incident and that Defendants then engaged in a series of deliberate acts to discourage them from attending depositions and from testifying or talking freely and honestly about it.

Fairley alleges that Defendants committed the following acts to prevent him from speaking out about excessive use of force:

(1) Byrne repeatedly assigned him to difficult and dangerous assignments; denied him paternity leave; denied his requests to be paid for overtime; asked him to falsify paperwork after he was attacked with a shank by a prisoner, so that

2

the prisoner would not be disciplined in order to show the inmates that Fairley could be attacked without facing the usual consequences; told him that if he testified truthfully an inmate would testify falsely that Fairley beat him up; denied his request for back-up when inmates were acting in a manner that suggested a fight was imminent; and failed to serve Fairley with a subpoena to appear for a deposition;

(2) Andrews failed to ensure that he was properly rotated through different assignments and failed to serve Fairley with a subpoena to appear for a deposition;

(3) Fermaint and Bercasio refused to allow him leave to use the restroom; refused to provide him supplies requested by prisoners; swore at him and called him "social worker" and "inmate lover;" and grabbed him from behind and imitated sexual acts;

(4) Bercasio told him that he should not "f**k with people" because that is how you get stabbed;

(5) Kaufman failed to conduct an investigation after Fairley was attacked by an inmate;

(6) Coffey told him that officers who tell on other officers "usually get met in the parking lot;" and

(7) Prohaska said that "they" were going to "bury" him.

Gackowski alleges that Defendants committed the following acts to prevent him from speaking out about excessive use of force:

(1) Fermaint and Bercasio drew and circulated cartoons depicting him in a sexually humiliating manner; grabbed him from behind and imitated sexual acts; made sexually derogatory comments about him and his wife; swore at him and called him "social worker" and "inmate lover;" and made threatening phone calls to him;

(2) Ochoa tried to give his wife the impression that he was having an affair and told other officers that he was having an affair;

(3) Andrews threatened to sue him for slander after he filed written complaints about the harassment;

(4) Weinstein failed to ensure that his complaints were investigated;

(5) Loizon and Byrne denied him overtime pay and assigned him double-duty shifts;

(6) Prohaska threatened his life when he said that "they" were going to "bury" Fairley and that he was "no better;" and

(7) Ernst and Diaz prohibited him from pressing formal charges or making a formal recorded statement against Prohaska.

As a result of the harassment and retaliation, Plaintiffs experienced severe stress and resigned from CCDOC in February 2003 out of fear for their own safety.

Plaintiffs bring the following five claims: (1) a section 1983 retaliation claim alleging that Andrews, Byrne, Loizon, Fermaint, Bercasio, Coffey, Prohaska, Ernst, Weinstein and Kaufman ("Individual Defendants"), under color of state law, harassed and retaliated against them in order prevent them from speaking about correctional officers' excessive use of force; (2) a section 1983 conspiracy claim alleging that the Individual Defendants and Diaz entered into an express or implied agreement to harass and retaliate against Plaintiffs; (3) a section 1985(2) conspiracy claim alleging that the Individual Defendants conspired to obstruct the due course of justice in the Fields Litigation; (4) an Illinois intentional infliction of emotional distress claim alleging that the Individual Defendants and Ochoa engaged in extreme and outrageous conduct that was intended to inflict, and did inflict, severe emotional distress upon Plaintiffs; and (5) an indemnification claim against Cook County.

Plaintiffs also name Cook County and Sheriff Sheahan as defendants in counts one through three alleging that the other Defendants' conduct resulted from a CCDOC policy, widespread custom or the policy-making decisions of Sheriff Sheahan. Finally, Plaintiffs name Cook County as a defendant in count four alleging that it "is liable for the wanton and willful acts" of the other Defendants.

## LEGAL STANDARDS

This Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S.

4

506 (2002). This Court will accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A complaint states a claim if it gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. "The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply." *Shah v. Inter-Continental Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002).

## ANALYSIS

The four motions to dismiss before this Court contain the following seven arguments: (1) Plaintiffs lack standing to bring a section 1985(2) claim; (2) counts one through four fail to state a claim against Defendants in their individual capacities; (3) counts one through three fail to state a claim against Defendants in their official capacities; (4) Defendants are entitled to qualified immunity with respect to counts one through three; (5) counts two and three are barred by the intracorporate conspiracy doctrine; (6) counts one and four contain impermissible group pleadings; and (7) Cook County should be dismissed from counts one through four because it cannot be held liable for the other Defendants' actions. Defendants also seek to strike all allegations prior to July 25, 2001 as barred by the statute of limitations. We address each argument in turn.

### I. Standing

Defendants assert that Plaintiffs lack standing to bring a claim under 42 U.S.C. § 1985(2) because they are not parties to the underlying litigation. The Seventh Circuit held in *Rylewicz v. Beaton Servs., Ltd.*, 888 F.2d 1175, 1180 (7th Cir. 1989), that a "mere witness" lacks standing to

5

sue under section 1985(2) because 42 U.S.C. § 1986, the statute that creates the cause of action for section 1985(2) violations, only provides relief to "the party injured, or his legal representative." Plaintiffs assert that this statement is *dicta* because the Seventh Circuit also stated that the *Rylewicz* plaintiffs did not allege any redressable injury or deprivation of their civil rights. *Id.* Despite *Rylewicz*'s alternate holding, the court held that the "literal construction of 'party'" in section 1986 does not include a "mere witness." *Id.*; *see also E.E.O.C. v. Outsourcing Solutions, Inc.*, No. 01 C 7037, 2002 WL 31409584, at *17 (N.D. Ill. Oct. 24, 2002) (stating that it was bound to follow *Rylewicz*); *Hefferman v. Hunter*, 189 F.3d 405, 410 (3rd Cir. 1999) (stating that the Seventh Circuit "concluded that relief is not available for 'a mere witness'"). As we are bound by *Rylewicz*, Plaintiffs lack standing to bring a section 1985(2) claim. Accordingly, we dismiss count three in its entirety.

## II. Failure to State a Claim against Defendants in their Individual Capacity

### A. Count One: Section 1983 Harassment and Retaliation Claim

To state a section 1983 harassment and retaliation claim, Plaintiffs must allege that Defendants, while acting under color of state law, harassed or retaliated against them because they exercised or attempted to exercise their First Amendment right to free expression. *See Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). A defendant acts under color of state law when he exercises or abuses power conferred upon him by the state. *West v. Atkins*, 487 U.S. 42, 49-50 (1988). State employment, however, is not conclusive of whether a defendant was acting under color of state law; the defendant's conduct must be related to his state authority. *Murphy v. Chi. Transit Auth.*, 638 F. Supp. 464, 467-68 (N.D. Ill. 1986). Finally, "[a]ny deprivation under color of law that is likely to deter the

exercise of free speech . . . is actionable . . . if the circumstances are such as to make [the conduct] an effective deterrent to the exercise of a fragile liberty." *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000).

Defendants have presented this Court with four arguments in support of their motions to dismiss this count for failure to state a claim: (1) Plaintiffs fail to properly allege that Defendants acted under color of state law; (2) Plaintiffs fail to allege a connection between Defendants' actions and Plaintiffs' First Amendment rights; (3) Plaintiffs fail to specify a legal theory or their protected speech; and (4) Plaintiffs fail to allege conduct that is actionable under section 1983. For the reasons provided below, we deny each of these arguments and find that this count properly states a section 1983 harassment and retaliation claim.

Andrews, Loizon, Fermaint, Bercasio, Coffey and Prohaska assert that Plaintiffs failed to allege that they acted under color of state law because their conduct was unrelated to the power conferred on them by the state. The state provides correctional officers with significant power over inmates and concomitant with this power is the responsibility to ensure inmate safety and the duty to investigate, report and prevent inmate abuse. *See Anthony v. County of Sacramento, Sheriff's Dept.*, 845 F. Supp. 1396, 1400 (E.D. Cal. 1994). Attempting to silence a colleague who seeks to report excessive use of force against inmates is a clear abuse of the power the state vests in correctional officers. Defendants' actions are, thus, related to their state authority, and we find that they were acting under color of state law.

Kaufman, Weinstein and Ernst assert that Plaintiffs failed to allege a connection between their actions and Plaintiffs' First Amendment rights. Defendants rely, however, on the summary judgment standard contained in *Thomsen v. Romeis*, 198 F.3d 1022, 1027 (7th Cir. 2000) (stating

that a "plaintiff cannot prevail unless he establishes that the defendant would not have taken the challenged actions 'but for' the constitutionally protected conduct"). A plaintiff does not need to allege "but for" causation in his complaint; he only needs to allege that he exercised or attempted to exercise a First Amendment right and to specify the retaliatory act. *See Higgs*, 286 F.3d at 439. Defendants' argument, therefore, is without merit as it demands that Plaintiffs plead facts that are not required by liberal federal notice-pleading standards. Fed. R. Civ. Pro. 8(a).

Similarly, Byrne's arguments that this count does not identify a legal theory or specifically identify the protected speech likewise involves summary judgment standards. On a motion to dismiss, Plaintiffs do not need to identify a specific legal theory and do not need to describe the precise time, place and manner of the protected speech. *Shah*, 314 F.3d at 282. Plaintiffs only have to provide Defendants with fair notice of their claims by describing them "briefly and simply." *Id.* Not only have Plaintiffs described their claims "briefly and simply," but they have provided factual support. For example, they claim that Byrne stated that a prisoner would testify falsely against Fairley if Fairley testified truthfully. Plaintiffs' complaint, therefore, provides Byrne with fair notice of their claims. Plaintiffs are not required to provide any additional facts in support of their claims at this point in the proceedings.

Finally, Byrne and Andrews assert that the conduct attributed to them in the complaint does not rise to the level of a constitutional violation. This argument also lacks merit because "[a]ny deprivation under color of law that is likely to deter the exercise of free speech . . . is actionable . . . if the circumstances are such as to make [the conduct] an effective deterrent to the exercise of a fragile liberty." *Power*, 226 F.3d at 820-21. As it is not "beyond doubt" that their

conduct did not deter Plaintiffs from exercising their First Amendment rights, we cannot dismiss Plaintiffs' claims on this basis. Thus, Byrne and Andrews' conduct is actionable.

### B. Count Two: Section 1983 Conspiracy Claim

Defendants assert that Plaintiffs fail to state a section 1983 conspiracy claim because they do not allege the approximate date that they reached an agreement to deprive Plaintiffs of their constitutional rights. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) (stating that plaintiffs only need to "indicate the parties, general purpose, and approximate date" of the conspiracy). Yet the complaint states that the "campaign to silence and harass" Plaintiffs started after the initiation of the Fields Litigation in August 2000. (R. 12, First Amended Complaint, ¶¶ 39, 53.) The complaint alleges the approximate date of the agreement and therefore sufficiently alleges a section 1983 conspiracy.

### C. Count Four: Intentional Infliction of Emotional Distress

In order to state an intentional infliction of emotional distress claim under Illinois law, Plaintiffs must allege that Defendants' extreme and outrageous conduct caused them severe emotional distress and that Defendants intended to inflict severe emotional distress or knew that such distress was highly probable. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Defendants assert that Plaintiffs failed to allege conduct that is sufficiently extreme or outrageous to be actionable under Illinois law.[2] While some of Defendants' conduct might not qualify as

---

[2] "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath*, 533 N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt. d (1965).

extreme or outrageous, federal notice-pleading standards do not require Plaintiffs to allege all of the facts in support of their claims. *Theriault v. Vill. of Schaumburg*, No. 02 C 7058, 2002 WL 31803826, at *4 (N.D. Ill. Dec. 12, 2002); *but see Kamberas v. Infiniti of Orland Park, Inc.*, No. 02 C 3000, 2002 WL 31248538, at *3 (N.D. Ill. Oct. 4, 2002) (permitting dismissal "if it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in her claim"). The most extreme conduct alleged in the complaint includes a death threat and deliberate acts, such as not providing back-up when requested and not investigating a prisoner attack, to place Plaintiffs in harm's way. While harassing remarks and failing to investigate written complaints of harassment are not this extreme, these acts must be considered in the context in which they were committed, inside Cook County jail as part of a campaign to silence Plaintiffs. Plaintiffs, therefore, have stated an intentional infliction of emotional distress claim.

### III. Failure to State a Claim against Defendants in their Official Capacity

In order to state a claim against Defendants in their official capacity, Plaintiffs must allege that they were injured by an express policy, a widespread custom that is so well-settled as to constitute a policy or a decision by an individual with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). While Defendants acknowledge that Plaintiffs have generally alleged that they were injured because of a policy, custom or decision by an individual with policymaking authority, they claim that Plaintiffs' complaint only includes "[b]oilerplate allegations of a municipal policy."[3] *McTigue v. City of Chi.*, 60 F.3d 381,

---

[3] Once again, Defendants rely on several cases applying summary judgment standards. *See, e.g., Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003); *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). At the summary judgment stage, a plaintiff's allegations must be supported with concrete facts, but on a motion to dismiss, a plaintiff does not need to "plead the facts that if true would establish (subject to any defenses) that the claim was valid." *Higgs*,

10

382 (7th Cir. 1995); *but see McCormick*, 230 F.3d at 325 (distinguishing *McTigue* because it did not contain "facts necessary to give the defendants . . . notice of the crux of the plaintiff's charges"). In *McTigue*, the Seventh Circuit affirmed the dismissal of an official-capacity claim because the plaintiffs alleged that they were discriminated against because of a municipal policy, but failed to provide the reason for the discrimination. *Id.* Plaintiffs' complaint, unlike the complaint in *McTigue*, does contain the operative facts necessary to provide Defendants with fair notice.[4] It alleges a policy, custom, or final policymaking decision to harass and retaliate against correctional officers who speak out against the excessive use of force. Additionally, the complaint contains facts that support this allegation. Plaintiffs allege that Coffey stated that officers who tell on other officers "usually get met in the parking lot." (R. 12, First Amended Compl. ¶ 50(a).) Thus, Plaintiffs have properly stated an official-capacity claim.

## IV. Qualified Immunity

A government official is entitled to qualified immunity, and thereby may avoid liability under section 1983, when his conduct does not violate a clearly established constitutional right of

---

286 F.3d at 439.

[4] The additional cases cited by Defendants are also distinguishable. In *Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 993 (N.D. Ill. 1998), the Court *did not* dismiss the case because plaintiffs alleged that "defendants have engaged in widespread discriminatory practices which have affected numerous employees over a period of years." And in *Silva v. City of Chicago*, No. 94 C 7228, 1996 WL 535244, at *4 (N.D. Ill. Sept. 18, 1994), the court dismissed an official capacity claim because the plaintiff failed "to allege any facts whatever showing the existence of a municipal custom, policy, or practice." Plaintiff's complaint is analogous to the complaint in *Tabor* and distinguishable from the complaint in *Silva* because it alleges, albeit indirectly, that other employees were affected by Defendants' conduct. It alleges that Coffey stated that officers who tell on other officers "usually get met in the parking lot." (R. 12, First Amended Compl. ¶ 50(a).) This statement indicates that Plaintiffs were not the only correctional officers subjected to harassment or retaliation.

which a reasonable person would have known. *Gregorich v. Lund*, 54 F.3d 410, 413 (7th Cir. 1995). Defendants assert that they are entitled to qualified immunity because their conduct did not violate a clearly established constitutional right. Defendants argue that Plaintiffs do not have a constitutional right to an investigation, to make a recorded statement, to sign a police report or to be free from peer-on-peer harassment. Yet Plaintiffs' complaint does not rely on any of these nebulous constitutional rights. Plaintiffs' complaint alleges that Defendants deprived them of their First Amendment right to free expression. This right was clearly established at all relevant times. *See, e.g., Connick v. Myers*, 461 U.S. 138, 142 (1983). A reasonable person in Defendants' position would have known that retaliating and harassing someone because of something they said or wanted to say was unconstitutional. Defendants, therefore, are not entitled to qualified immunity.

## V. Intracorporate Conspiracy Doctrine

The intracorporate conspiracy doctrine precludes members of the same entity from becoming "conspirators" when they act within the scope of their authority. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). "The intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory." *Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *15 (N.D. Ill. April 26, 2000); *see also Tabor*, 10 F. Supp. 2d at 994 ("The policy behind the doctrine is to preserve independent decision-making by business entities and their agents free of the pressure that can be generated by allegations of conspiracy.").

Defendants claim that count two is barred by the intracorporate conspiracy doctrine because the acts underlying count two were within the scope of their employment. We fail to comprehend how agreeing to harass and retaliate against employees is within the scope of Defendants' employment. *See Emery v. Northeast Ill. Rgn'l Commuter R.R. Corp.*, No. 02 C 9303, 2003 WL 22176077, at *4 (N.D. Ill. Sept. 18, 2003) (stating that "courts facing § 1983 claims involving police misconduct have refused to apply the doctrine"). While some of the retaliatory conduct—assigning double-duty shifts, denying paternity leave, investigations of misconduct—were routine, everyday decisions, the alleged agreement to harass and retaliate against Plaintiffs cannot be similarly described. Plaintiffs did not allege a conspiracy to assign double-duty shifts, but a conspiracy to deprive them of their First Amendment rights. Plaintiffs' conspiracy claim, therefore, is not barred by the intracorporate conspiracy doctrine.

## VI. Group Pleading

Defendants assert that Plaintiffs have accused them of engaging in general misconduct without identifying the specific act committed by each Defendant. *See, e.g., Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Defendants' assertion, however, is incorrect as Plaintiffs' complaint attributes specific conduct to each Defendant. Nonetheless, Defendants assert that it is "impossible to determine which defendants are being accused of 'depriving which plaintiff of what speech (Count I) or which defendants are being accused of inflicting what 'emotional distress' on which plaintiff (in Count IV)." (R. 23, Defs.' Mot. at 11-12.) Defendants apparently would prefer that the complaint include two section 1983 harassment claims and two intentional infliction of emotional distress claims. While the presence of two plaintiffs, fourteen defendants and five counts does render Plaintiffs' complaint a bit complicated, the complaint provides

13

Defendants with "fair notice" of these claims, which is all that is required. *Conley*, 355 U.S. at 47.

## VII. Defendant Cook County

Plaintiffs allege that Cook County is liable because the harassment and retaliation they suffered resulted from an express municipal policy, widespread custom or decision by Cook County Sheriff Sheahan, who Plaintiffs allege had final policy-making authority for Cook County. *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658 (1978). They also allege that Cook County is vicariously liable for their state law claim. Cook County counters that it cannot be found directly or vicariously liable because Sheriff Sheahan and the other Defendants are not Cook County employees. We agree with Cook County and dismiss them from counts one through four.

The Seventh Circuit held in *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989), that a county cannot be held liable for the alleged conduct of a sheriff or his deputies. Plaintiffs assert that *Thompson* is no longer controlling because the Supreme Court in *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997), held that a court must look into the "relevant state law" to understand the "actual function of a governmental official" in order to determine whether a sheriff has final policy-making authority. While *Thompson* only includes two sentences analyzing Illinois state law, the Seventh Circuit's reasoning is entirely consistent with *McMillian*.

> The Cook County Jail, and the Cook County Department of Corrections, are solely under the supervision and control of the Sheriff of Cook County. *See* Ill. Ann. Stat. ch. 125, ¶¶ 202, 203 (Smith-Hurd 1967 & Supp. 1989). The Sheriff is an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners. Ill. Const. Art. VII, § 4(c); *see also Baltz v. County of Will*, 609 F. Supp. 992, 995 (N.D. Ill. 1985); *Thomas v. Talesky*, 554 F. Supp. 1377, 1378-79 (N.D. Ill. 1983).

14

*Thompson*, 882 F.2d at 1187; *see Horstman v. County of DuPage*, 284 F. Supp. 2d 1125, 1131 (N.D. Ill. 2003); *but see Hernandez v. County of DuPage*, No. 96 C 8030, 1997 WL 598132, at *6, 8 (N.D. Ill. Sept. 19, 1997) (stating that after *McMillian* "the question of whether an Illinois sheriff is the final policymaker for the county must be subjected to a more searching analysis," but noting that "a county board has no power to alter a sheriff's duties with respect to his management of the county jail"). Thus, we find that *Thompson* remains controlling Seventh Circuit law and hold that Cook County cannot be directly liable because it has no authority over the Cook County Sheriff or his deputies.

The Illinois Supreme Court, in *Moy v. County of Cook*, 640 N.E.2d 926, 930 (Ill. 1994), also concluded that Cook County cannot be vicariously liable for the actions of the Cook County Sheriff and his deputies because "the position of sheriff is an office and not a mere employment." We therefore find that Cook County cannot be vicariously liable for the state law claim. Accordingly, we dismiss Cook County from counts one through four of the amended complaint.

Finally, Cook County requests leave to file an answer to count V of the amended complaint after this Court has ruled on the present motion. *See Oil Express Nat'l, Inc. v. D'Alessandro*, 173 F.R.D. 219, 221 (N.D. Ill. 1997). We grant Cook County's request and order it to answer count five within ten days.

## VII. Statute of Limitations

Defendants have also requested we strike all of their conduct in the complaint prior to July 25, 2001 because it is barred by the statute of limitations. This Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. Pro. 12(f). The statute of limitations for section 1983 claims is

imported from relevant state law; in this case it is Illinois' two year statue of limitations for personal injuries. *Kalimara v. Ill. Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989). A plaintiff can obtain relief, however, for time-barred acts by linking them with an act that is within the statute of limitations through the continuing violation doctrine. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). This Court will only use the continuing violation doctrine to make time-barred conduct actionable if it would have been unreasonable for Plaintiffs to file suit when the time-barred conduct occurred. *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989), *rev'd on other grounds, Rush v. McDonald's Corp.*, 966 F.2d 1104, 1119-20 (7th Cir. 1992). For example, time-barred acts can be linked to acts within the statute of limitations when a plaintiff has no reason to believe that he was a victim of harassment, retaliation or discrimination until a series of events established a visible pattern. *Id.*; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (explaining that the continuing violation doctrine is appropriate in hostile work environment claims because "a single act of harassment may not be actionable on its own").

Defendants claim that all of the conduct described in the complaint prior to July 25, 2001 is barred by the statute of limitations. Plaintiffs, however, assert that these acts are linked to the acts falling within the statute of limitations because they are part of a campaign of harassment and retaliation. Plaintiffs allege that this campaign began after the initiation of the Fields Litigation in August 2000 and intensified as the litigation advanced: in February 2002 when Defendants learned that Fairley had been subpoenaed to appear for a deposition and then again in late 2002 when Fairley was to be deposed. Given this sequence of events, we find that the continuing violation doctrine is appropriate in this case. On the basis of the time-barred conduct,

Plaintiffs would not have known that Defendants were conspiring to deprive them of their First Amendment rights through harassment and retaliation.[5] Thus, none of the alleged conduct is barred by the statute of limitations. Accordingly, Defendants' motion to strike is denied.

## CONCLUSION

For the reasons provided above, we dismiss count three in its entirety and dismiss Defendant Cook County from counts one through four. Defendants' motions are otherwise denied. (R. 20-1: R. 21-1; R. 22-1; R. 23-1; R. 23-2.) The parties should proceed with discovery. All discovery must be completed by August 30, 2004. A status hearing will be held in open court on February 24, 2004 at 9:45 a.m. for the express purpose of setting a firm trial date for this lawsuit.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: January 27, 2004

---

[5] The complaint does not provide dates for all of Defendants' actions, so we cannot specify every act that was outside of the statute of limitations. This uncertainty does not alter our decision because Defendants' knowledge of Fairley's deposition, the event that allegedly triggered the first escalation in harassment, occurred within the statute of limitations. (R. 12, First Amended Compl. ¶ 43.)