IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROGER FAIRLEY and RICHARD GACKOWSKI, )
)
Plaintiffs, )
)
v. )   Case No. 03 C 5207
)
DENNIS ANDREWS, *et al.*, )   Judge Castillo
)
Defendants. )

## PLAINTIFFS' MOTION TO COMPEL DEPOSITIONS OF DEFENDANTS FERMAINT AND BERCASIO AND FOR SANCTIONS

Plaintiffs, by counsel, and pursuant to Rule 37(a)(2) and (4) of the Federal Rules of Civil

Procedure, move this Court to enter an order (i) compelling defendants Evan Fermaint and Norberto

Bercasio to appear for deposition on May 4, 2005 and May 6, 2005, respectively, and (ii) ordering

defendants' counsel to pay the expenses associated with bringing this motion for exhibiting bad faith

in canceling Fermaint's deposition. In support of this motion, plaintiffs state as follows:

Defendants Evan Fermaint and Norberto Bercasio are central figures in the pattern of abusive

harassment suffered by plaintiffs and which is at the center of this case. Fermaint and Bercasio

engaged in unacceptable conduct towards plaintiffs, ranging from derogatory and crude comments,

harassing telephone calls, grabbing plaintiffs and sexually assaulting them and drawing the vile and

sexually perverted cartoons that the Court was shown at the settlement conference. Defendant

Bercasio told plaintiff Fairley that Fairley was stabbed because he "f—d with" other correctional

officers.

Plaintiffs have been seeking to depose Fermaint and Bercasio since Fall of 2004. In 2005,

counsel for Fermaint and Bercasio finally offered dates for their depositions. Fermaint was

scheduled to be deposed on March 1, 2005, but defendants canceled the deposition on February 25. He was then scheduled to be deposed on March 31, but defendants canceled that deposition on March 29. Bercasio's deposition had been scheduled for April 28, 2005 but was postponed by defendants on April 8.

Finally, on April 8, 2005, Fermaint's deposition was confirmed for April 28. On April 26, 2005, Bercasio's deposition was confirmed for May 6. *See* Letters from José Behar to defense counsel confirming deposition dates, attached hereto as Exhibit A.

At the status hearing on April 27, 2005, plaintiffs' counsel reported to the Court that plaintiffs would be deposing Fermaint on April 28 and Bercasio the following week. Since the Court and all counsel know, and have known since March 4, 2005, that the trial in *Fields v. Sheahan*, Case No. 00 L 9339 (pending in the Circuit Court of Cook County), is scheduled to begin on May 16, the Court raised the issue of the possibility that the *Fields* trial might interfere with the discovery schedule in this case. Plaintiffs' counsel assured the Court that Fermaint's and Bercasio's depositions were scheduled far enough in advance of the *Fields* trial that discovery in this case could proceed without interference. Counsel for Fermaint and Bercasio was present at the status hearing and said nothing about the depositions.

After the status hearing, plaintiffs' counsel returned to the office and spent all day April 27 (as well as April 26) preparing for Fermaint's deposition on April 28. After the status hearing, Fermaint and Bercasio's counsel also arrived at plaintiffs' offices for the deposition of defendant Juan Diaz, which began right after the status hearing at approximately 10:30 a.m. and continued to approximately 3:30 p.m. Before leaving plaintiffs' offices, defense counsel confirmed that Fermaint's deposition would proceed on the following day.

2

At 5:37 p.m. on April 27, 2005, the night before defendant Fermaint's deposition, counsel for defendants Fermaint and Bercasio sent an e-mail to plaintiffs' counsel canceling both Fermaint's deposition as well as the deposition of defendant Bercasio, scheduled for May 6, 2005. Counsel did not bother to call.[1] Counsel ostensibly canceled these depositions because he did not want to "interfere with [Fermaint's and Bercasio's] trial preparation" in the *Fields* case, more than two weeks from now, and because he did not want to "provide the plaintiffs' attorneys in that case with additional deposition transcripts."[2] *See* e-mail dated April 27, 2005 from Dan Duffy to Mary Rowland and José Behar, attached hereto as Exhibit C.

Defense counsel waited until 5:37 p.m. on April 27 to cancel Fermaint's deposition even though they had ample opportunity to cancel it earlier in the day. Having known since at least March 4 that the *Fields* trial was scheduled for May 16, defendants' counsel could have informed plaintiffs' counsel of the cancellation in open court at the status hearing, in the hallway following the status hearing or at any other time during defendant Diaz's deposition later that day. Instead, two hours after Diaz's deposition concluded for the day, defense counsel sent plaintiffs' counsel an e-mail about the cancellations.

---

[1] Fortunately, plaintiffs' counsel was working late that evening and received the e-mail in time to call the court reporter and the plaintiffs, at their homes, to inform them of the precipitous cancellation of the Fermaint deposition.

[2] Counsel's position that they do not want to provide the *Fields* plaintiffs' attorneys with additional deposition transcripts is unsustainable. On February 10, 2005, and without any objection by defendants, the Court approved production of all deposition transcripts in this case to *Fields* plaintiffs' counsel. *See* Transcript of Proceedings on February 10, 2005, p. 13, attached as Exhibit B. Further, defense counsel in *Fields* have access to all four deposition transcripts of Mr. Fairley's testimony and two deposition transcripts of Mr. Gackowski's testimony in this case.

Plaintiffs have been attempting to depose Fermaint and Bercasio for months. Their counsel have now canceled Fermaint's deposition three times and Bercasio's twice. Since March, defense counsel have known that the *Fields* trial was scheduled for May 16 and still confirmed Fermaint's deposition for April 28 and Bercasio's deposition for May 6. Yet, they waited until the day before Fermaint's deposition, past regular working hours, to cancel. There is simply no excuse for the bad faith shown by counsel.

This is not the only instance in which counsel for Fermaint and Bercasio have demonstrated bad faith with respect to these two depositions. Defense counsel have failed to comply with representations made to the Court concerning the production of their clients' financial documents. On December 28, 2004, counsel for Fermaint and Bercasio stated to the Court that they would produce all of their clients' financial documents "one week in advance" of the depositions. *See* Transcript of Proceedings for December 28, 2004, p. 20, attached hereto as Exhibit D. Despite plaintiffs' counsel's repeated attempts to get defense counsel to live up to this promise, defense counsel have produced no financial documents for defendant Bercasio and sorely incomplete documents for defendant Fermaint.[3] *See, e.g.,* e-mails to and from plaintiffs' counsel and defendants' counsel regarding same, attached hereto as Group Exhibit E.

Proceeding with Fermaint's and Bercasio's depositions as scheduled would not and could not have conceivably interfered with their trial preparation in the *Fields* case. Defense counsel's stalling and bad faith, last-minute cancellation of Fermaint's deposition should not be countenanced.

---

[3]     The only financial documents produced by Fermaint to date have been an unsigned 2002 federal tax return and an unsigned 2003 federal tax return.

4

Fermaint and Bercasio should be ordered to sit for their depositions, and their counsel should be sanctioned for their maneuvers.

Plaintiffs respectfully request that the Court compel defendant Fermaint to appear for deposition on May 4, 2005 at 10:00 a.m., compel defendant Bercasio to appear for deposition on May 6, 2005 at 10:00 a.m. and order that their counsel pay the attorneys' fees and costs associated with bringing this motion as well as the cost of the court reporter's cancellation fee.

Dated: April 28, 2005                           Respectfully submitted,

One of the Attorneys for Plaintiffs

Matthew J. Piers
Mary M. Rowland
José J. Behar
**GESSLER HUGHES SOCOL PIERS
RESNICK & DYM, LTD.**
Three First National Plaza
70 W. Madison St.
Suite 4000
Chicago, IL 60602
312.580.0100

# EXHIBIT A



| | | | |
|---|---|---|---|
| José J. Behar | Kimberley Marsh | Mark B. Weiner | Alex Montgomery |
| Mark S. Dym | Terence J. Moran | | Fazila Vaid |
| George W. Gessler | Donald G. Peterson | Natalie A. Bautista | |
| John K. Hughes* | Matthew J. Piers | Juliet Berger-White | Gary N. Chodorow |
| Bernice Jacobs | Kalman D. Resnick | Samir Z. Chowhan | Susan Dawn |
| Richard F. Johnson** | Frederick S. Rhine | Cathy Higgins-Mora | Ronald Panter |
| Joshua Karsh | Mary M. Rowland | Anthony S. Hui | *of counsel* |
| Peter M. Katsaros | Donna Kaner Socol | Allison G. Margolies | *also admitted in Wisconsin* |
| Barry Locke | J. Eric VanderArend | Peter C. McLeod | **also admitted in Indiana** |

## Attorneys at Law

April 8, 2005

***VIA FACSIMILE and FIRST CLASS MAIL***

Matthew P. Walsh
James P. Navarre
Hinshaw & Culbertson
222 North LaSalle Street, Suite 300
Chicago, IL 60601

Michael J. Hayes
John T. Roache
Wallace C. Solberg
Bell Boyd & Lloyd
Three First National Plaza
70 West Madison, Suite 3300
Chicago, IL 60602

Alastar S. McGrath
Law Offices of Alastar S. McGrath
227 West Monroe, Suite 2000
Chicago, IL 60606

Daniel Duffy
Duffy and Mundo, P.C.
208 West Washington, Suite 512
Chicago, IL 60606

Jeffrey S. McCutchan
Special Projects and Assignments
District 1 Office of the Cook County
  State's Attorney Office
500 Richard Daley J. Daley Center
Chicago, IL 60602

**Re:** **Fairley and Gackowski v. Andrews, et al., 03 C 5207**

Dear Counsel:

We are confirming that Evan Fermaint's deposition has been re-scheduled for April 28, 2005 at 10:00 a.m. at our offices.

Sincerely,

José J. Behar

JJB/sjb

S:\WD\LIT\5402\14369\00058536.WPD

| | | | |
|---|---|---|---|
| **GESSLER HUGHES SOCOL PIERS RESNICK & DYM LTD.** | Robert R. Anderson III<br>José J. Behar<br>Mark S. Dym<br>George W. Gessler<br>John K. Hughes*<br>Bernice Jacobs<br>Richard F. Johnson**<br>Joshua Karsh<br>Peter M. Katsaros<br>Barry Locke | Kimberley Marsh<br>Terence J. Moran<br>Donald G. Peterson<br>Matthew J. Piers<br>Kalman D. Resnick<br>Frederick S. Rhine<br>Mary M. Rowland<br>Donna Kaner Socol<br>J. Eric VanderArend<br>Mark B. Weiner | Natalie A. Bautista<br>Juliet Berger-White<br>Samir Z. Chowhan<br>Cathy Higgins-Mora<br>Anthony S. Hui<br>Allison G. Margolies<br>Peter C. McLeod<br>Alex Montgomery<br>Fazila Vaid | Gary N. Chodorow<br>Susan Dawn<br>Joseph A. Moore<br>Ronald Panter<br><span style="font-size:smaller">of counsel</span><br><br>*also admitted in Wisconsin<br>**also admitted in Indiana |

**ATTORNEYS AT LAW**

April 26, 2005

<u>VIA FACSIMILE AND FIRST CLASS MAIL</u>

312.896.9318
Daniel P. Duffy
Duffy and Mundo, P.C.
208 West Washington, Suite 512
Chicago, IL 60606

312.726.1093
Alastar S. McGrath
Law Offices of Alastar S. McGrath
227 West Monroe, Suite 2000
Chicago, IL 60606

    **Re:**   **Fairley & Gackowski v. Andrews, *et al.*, 03 C 5207**

Dear Dan and Alastar:

    This letter confirms that Defendant Norberto Bercasio's deposition will take place on Friday, May 6, 2005 at 10:00 a.m. at our offices.

    Please call me if you have any questions.

            Very truly yours,

            José J. Behar

JJB/sbh

cc:    John T. Roache
       Wallace Solberg
       Matthew Walsh II
       Jeffrey McCutchan

S:\WD\LIT\5402\14369\00059774.WPD

# EXHIBIT B

1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3

ROGER FAIRLEY and RICHARD        )
4    GACKOWSKI,                   )
                    Plaintiffs,   )
5    -vs-                         )
                                  )
6    DENNIS ANDREWS, Supt.; EDWARD )   Case No. 03 C 5207
     BYRNE, Lt.; PATRICK LOIZON,  )
7    Sgt.; EVAN PERMAINT, Ofc.;   )   Chicago, Illinois
     NORBERTO BERCASIO, Ofc.; FRED )   February 10, 2005
8    COFFEE, Ofc.; RONALD PROHASKA, )   10:15 a.m.
     Ofc.; GREGORY ERNST,         )
9    Investigator; SAUL WEINSTEIN, )
     Former Chief Investigator; TIM )
10   KAUFMAN, Chief Investigator; )
     GABRIEL OCHOA, Ofc.; JUAN     )
11   DIAZ, Chief Investigator, in )
     their individual capacities; )
12   MICHAEL SHEAHAN, Sheriff, in )
     his official capacity; and   )
13   COOK COUNTY,                  )
                    Defendants.    )
14

15         TRANSCRIPT OF PROCEEDINGS
     BEFORE THE HONORABLE RUBEN CASTILLO
16   APPEARANCES:

17   For the Plaintiffs:        MR. MATTHEW J. PIERS
                                Gessler, Hughes, Socol, Piers,
18                              Resnick & Dym, Ltd.
                                70 W. Madison St., Suite 4000
19                              Chicago, Illinois  60602
                                (312) 580-0100
20

21   Court Reporter:

22         KATHLEEN M. FENNELL, CSR, RPR, FCRR
                Official Court Reporter
23           United States District Court
         219 South Dearborn Street, Suite 2318-A
24              Chicago, Illinois  60604
               Telephone:  (312) 435-5569
25         email:  Kathyfennell@earthlink.net

```
 1  APPEARANCES:   (Continued)

 2  For the Defendant Byrne:          MR. JAMES P. NAVARRE
                                      MS. DIANE WEBSTER
 3                                    Hinshaw & Culbertson
                                      222 North LaSalle Street
 4                                    Suite 300,
                                      Chicago, Illinois 60601
 5                                    (312) 704-3000

 6  For Defendants Andrews, Loizon,
    Permaint, Bercasio, Coffee,
 7  Prohaska and Ochoa:               MR. ALASTAR S. McGRATH
                                      Law Offices of Alastar S.
 8                                    McGrath
                                      55 W. Wacker Dr., Suite 1000
 9                                    Chicago, Illinois  60601
                                      (312) 907-0653
10

11  For Defendants Ernst, Weinstein,
    Kaufman, Diaz, Sheahan:           MR. JOHN T. ROACHE
12                                    MR. WALLACE SOLBERG
                                      Bell, Boyd & Lloyd, LLC
13                                    70 W. Madison Street
                                      Suite 3300
14                                    Chicago, Illinois  60602
                                      (312) 372-1121
15

16

17

18

19

20

21

22

23

24

25
```

1    (Proceedings heard in open court:)

2         THE CLERK:  03 C 5207, Fairley versus Andrews.

3         THE COURT:  Good morning.

4         MR. ROACHE:  Good morning, your Honor.  John Roache

5    and Wally Solberg on behalf of defendants Sheriff Sheahan,

6    Kaufman, Weinstein, Ernst and Diaz.

7         MR. NAVARRE:  Jim Navarre and Diane Webster on behalf

8    of defendant Lieutenant Byrne.

9         MR. McGRATH:  Alastar McGrath, on behalf of Defendants

10   Andrews, Loizon, Permaint, Bercasio, Coffee,

11   Prohaska and Ochoa.

12        THE COURT:  Okay.  Well, I haven't seen you in a

13   while.

14        MR. PIERS:  And Matthew --

15        THE COURT:  Matt Piers.

16        MR. PIERS:  On behalf of the plaintiffs, your Honor.

17   Good morning.

18        THE COURT:  Outnumbered.

19        MR. PIERS:  As usual.

20        THE COURT:  Where do you want to start?  I know there

21   are several different motions that are up today, and I'm also

22   scheduled to see you tomorrow morning, right?

23        MR. ROACHE:  Well, your Honor, that's actually the

24   first.  We have an agreed motion that we filed requesting that

25   we reschedule the settlement conference from tomorrow to either

1   March 8th or 9th if the Court is available.

2            THE COURT: Okay.

3            MR. ROACHE: And we have agreement of all parties on

4   the movement of that and those dates being acceptable.

5            THE COURT: Okay. My only concern is if you've been

6   here this morning is I have set a case to start trial on March

7   7th, so my time availability, given the trial -- we can start

8   March 9th at 4:30, and I'll go as long as we all have energy.

9   If that's acceptable, that's fine.

10           MR. NAVARRE: That's fine, Judge.

11           THE COURT: Okay.

12           MR. ROACHE: That's fine, your Honor.

13           THE COURT: Then March 9th, we'll start at 4:30.

14           MR. PIERS: That's fine, your Honor.

15           THE COURT: That takes care of one motion. That

16  certainly is granted.

17           Where do you want to go next?

18           MR. PIERS: Your Honor, we have a number of motions

19  up. Let's deal with what I think are the less controversial

20  motions --

21           THE COURT: Okay.

22           MR. PIERS: -- which are the various subpoenas. I've

23  not received any written objections or heard any oral objections

24  by telephone or otherwise from defense counsel. Maybe we could

25  deal with those.

1    THE COURT:  Let's start plaintiffs' motion for leave
2  to serve a subpoena for the deposition of Investigator Holman?
3    MR. PIERS:  That is one, and by the way, that one
4  should be corrected on its face to state in the second-to-last
5  line on the first page we have requested that the deposition
6  take place on a date which has passed already.  The date that we
7  have scheduled with Mr. Holman's attorney, should we have this
8  granted, is February 18th, not February 4th.
9    THE COURT:  Okay.  Is there any opposition to this
10  motion?
11    MR. ROACHE:  No objection, your Honor.
12    THE COURT:  It will certainly be granted and as
13  amended, the deposition will proceed on February 18th.  And I
14  apologize for not being able to stick to our schedule, get you
15  in here before.
16    Let's go then to plaintiffs' motion for leave to serve
17  a subpoena for documents to the secretary -- to the Office of
18  Cook County Board of Commissioners and a subpoena to the County
19  Clerk's Office.  Any opposition to that?
20    MR. ROACHE:  Your Honor, no objection to the serving;
21  but, again, we have a concern of the overbreadth, the time
22  period of '94 to February '03, but I assume the Sheriff's Merit
23  Board will raise those issues in responding.
24    THE COURT:  They can raise them.  I'll certainly grant
25  it.  It just gives the plaintiffs leave to serve the subpoena.

1  So it will be granted.

2        Then plaintiffs have a motion for leave to serve a

3  subpoena for documents upon the Cook County Sheriff's Merit

4  Board.

5        MR. PIERS:  Correct, sir.

6        THE COURT:  And plaintiffs' motion for leave to serve

7  subpoenas for deposition with regard to that.

8        Is there any opposition to that?

9        MR. ROACHE:  Your Honor, to the merit board, and I

10  think I misspoke on the previous motion, that's where our

11  concern is as to the time frame and overbreadth.  I believe the

12  State's Attorney will address the other subpoena.

13        We do have an objection on the motion to serve

14  subpoenas on the individuals listed in the most recent motion.

15        MR. PIERS:  I'd be happy --

16        THE COURT:  Okay.  I don't think those are here, but

17  we're getting to that.

18        I'll certainly grant this motion, reserve ruling on

19  the individuals right now.

20        MR. SOLBERG:  Judge, sorry --

21        THE COURT:  Go ahead.

22        MR. SOLBERG:  Wallace Solberg.  Just for clarity,

23  Judge, you granted which motion just now, your Honor?  There's

24  so many --

25        THE COURT:  The one I just spoke about --

1     MR. PIERS:  The Merit Board.

2     THE COURT:  -- which is the Merit Board.

3     MR. SOLBERG:  Thank you, your Honor.

4     THE COURT:  Okay.

5     MR. ROACHE:  And we did, and I'm not sure, since

6  Mr. Piers said he didn't receive a response, we did file a

7  response at the end of the day on the motion for leave to serve

8  the subpoenas on --

9     THE COURT:  For depositions?

10     MR. ROACHE:  -- for depositions, yes.

11     THE COURT:  And that's for the six individuals, and I

12  did get that response this morning.

13     MR. PIERS:  I did not, but I'm prepared to discuss it

14  in any case.

15     THE COURT:  And I've read it.

16     MR. NAVARRE:  Judge, in addition, Lieutenant Byrne

17  filed objection to the motion for leave to serve a subpoena for

18  the deposition of Mr. Lydon.

19     THE COURT:  Of Mr. Who?

20     MR. PIERS:  James Lydon.

21     THE COURT:  Okay.  That's one of the six.

22     MR. PIERS:  That would be Mr. Navarre's partner.

23     THE COURT:  Okay.  Let's take that up except for --

24  let's see, should we talk about this motion to strike the agreed

25  protective order, to vacate the agreed protective order?

1          MR. ROACHE:  Yes, your Honor.

2          MR. PIERS:  That's fine, your Honor.  And that
3    response I did receive and reviewed.

4          And our concern here, to cut to the quick, is really
5    twofold.  We've raised with you previously the concern about all
6    the documents being confidential, and we heard you.

7          Then we have since had an issue that entire deposition
8    transcripts have been, in the instances we've cited, made
9    subject to the protective order by blanket, by blanket coverage
10   completely.

11         We have raised that and indeed each one of the defense
12   counsel has done that on at least one deposition.  We have
13   raised that with each defense counsel that we think it's
14   inappropriate.  The impetus for raising it came from requests
15   from the Fields attorneys, the Fields case attorneys, to be able
16   to review the sworn testimony in this case.  And I told them
17   that I certainly had no problem with it, but we had a valid,
18   enforceable protective order before the Court and that we should
19   really talk to the defense counsel.

20         They asked that I do so.  Counsel for defendant Byrne
21   has agreed to withdraw the blanket designation on that
22   deposition and give me more detailed specific confidentiality
23   designations.  I believe counsel for Mr. Ernst, Mr. Roache, has
24   done the same thing.  They're going to review that and indeed
25   we're not really even done with that deposition.

1        I traded some communications with counsel for

2  defendants Coffee and Ochoa in which they took the position that

3  I should designate those portions of the depositions which I

4  thought should be lifted from the confidentiality agreement.

5        I told them that for two reasons I didn't think I

6  could do that.  One was that I couldn't determine what their

7  client deemed to be confidential.  I can only determine that,

8  you know, everything from the oath to the signature has never

9  been confidential on any deposition I've ever seen and certainly

10  wasn't on those depositions by any legitimate meaning of the

11  term confidential.

12        We don't have a resolution of that.  I do think that

13  it is inappropriate except absent extraordinary circumstances,

14  which sure don't exist in this case, to put such a blanket

15  designation on deposition transcripts.

16        Then following the last time we discussed this with

17  your Honor, I went and took a look at the recent case law from

18  the Seventh Circuit, which I admit to you I was not very

19  familiar with prior to that.  And upon reading it, it appeared

20  to us that the protective order that we agreed to, and indeed

21  that I negotiated from a draft that was originally prepared

22  before our involvement in the case, is overly vague really and,

23  therefore, overly broad and in violation of the applicable

24  Supreme Court -- Seventh Circuit case law.

25        For that reason, instead of limiting our motion to the

1    deposition transcripts, we thought that we had an obligation to

2    present to the Court this problem, to suggest that the

3    protective order needs to be modified or lifted and replaced

4    with something.

5            If the Court is not so inclined, I think I have

6    fulfilled my obligations as an officer of the Court with regard

7    to that matter.

8            There really is no standard in the agreed protective

9    order that's been entered in this case, not even a vague one, to

10   determine what's confidential and what isn't. It says simply

11   things in the following types of files may be confidential.

12           I was eager at the time I negotiated that to get going

13   with discovery. I think that counsel for defendants will agree

14   that we spent, nonetheless, a fair amount of time negotiating

15   the terms of that agreement. I don't think it's tight enough.

16           So we ask really for two things: One, that the

17   blanket designations of depositions be declared by the Court to

18   be inappropriate; and, two, that we get some guidance either in

19   the form of a new protective order or otherwise as to where we

20   go from here.

21           I'm not particularly interested in putting defendants

22   to the task of going back through all the thousands of pages and

23   removing confidentiality designations, but if we had some

24   standards by which to judge what was confidential, and we've

25   suggested some in our motion, then I think we wouldn't have to

1  go back and do that again.  That's our position.

2       THE COURT:  Okay.  I'll hear from the other side.

3       MR. ROACHE:  Your Honor, we filed a written response
4  on this.

5       THE COURT:  I did read it.

6       MR. ROACHE:  Okay.  And we believe the current
7  protective order is in compliance with both the Supreme Court
8  rulings and the Seventh Circuit rulings cited by both us and the
9  plaintiffs.

10       As Mr. Piers acknowledged, more than six months ago we
11  negotiated and quite extensively negotiated the terms of this
12  protective order.  We didn't give carte blanche to everyone.  We
13  identified the type of categories of information that could be
14  designated as confidential, including personnel files, including
15  investigative files.  As Mr. Piers has said again today and as
16  he said on a previous motion before the Court, he has no problem
17  with the protective order, and, in fact, he's agreed to it.

18       We've reasonably relied on that document to produce
19  more than a quarter million documents.  We believe that, as
20  based on the cases we've cited, it would be patently unfair to
21  change the terms of the protective order at this point.

22       Moreover, plaintiffs have not stated a compelling
23  reason or an extraordinary circumstance why they'd need to
24  modify or vacate the protective order.  The protective order
25  allows plaintiffs to give copies of these documents to the

1  plaintiffs themselves, to their experts, to their consultants.
2  It doesn't in any way inhibit their prosecution of the case.

3       The courts that we've identified, the Supreme Court in
4  Seattle Times, the Seventh Circuit in Baxter, recognized that
5  restrictions may be placed on the public's right to pretrial
6  discovery.  The documents we're talking about here aren't
7  documents that have been filed with the Court, your Honor.
8  They've been produced in discovery.

9       And as you know, you modified the protective order to
10 make sure it was in compliance with the Seventh Circuit ruling
11 by saying that at any time any document that's filed under seal,
12 you retain the ultimate discretion to unseal any of those
13 documents.

14            THE COURT:  Okay.

15            MR. ROACHE:  And just one other -- earlier when
16 plaintiffs brought another motion, your Honor, you said that the
17 appropriate time to address this would be during a pretrial
18 conference when I take it the parties would be identifying the
19 documents to be offered into evidence.  And we remain willing
20 to, if plaintiffs identify certain documents they feel need to
21 be redesignated, to work with them pursuant to the terms of the
22 protective order, but we don't think that the protective order
23 should be vacated or modified at this time.  And, therefore, the
24 plaintiffs' motion should be denied.

25            THE COURT:  Well, I do think, based on my experience

1  presiding over this case, that too many things have been
2  designated confidential. It is hard for me then to just reach
3  the conclusion that we should vacate the agreed protective
4  order. Unfortunately, we're going to go through this point by
5  point.

6      But I will allow at this point, because I think the
7  issue right now is the trial of the Fields case, I will allow
8  the Fields attorneys access to the discovery materials in this
9  case except for the following, which are I think and have to
10  remain confidential. That is, materials that could in any way
11  compromise the safety of the Cook County jail and its operation,
12  as well as materials that would release personal information,
13  that is, Social Security numbers, personal identifiers,
14  personnel files of any of the individuals, be it plaintiffs or
15  defendants, involved or deposed in this case.

16      I think that is the proper scope of confidentiality as
17  I had it in mind when I entered the agreed protective order,
18  which, of course, allows me the final say over confidentiality
19  which I can change at any point in time and I do so today and
20  will continue to do so as this case continues down the road
21  toward trial.

22      So to that extent, the motion is granted, just to that
23  extent.

24      MR. PIERS: Understood, sir.

25      THE COURT: Now, does that get us to the six

1    individuals?

2            MR. PIERS:  I believe that's correct.

3            THE COURT:  Okay.  I've read the opposition, and I've

4    read, you know, the plaintiffs' assertions as to why these

5    individuals are needed.

6            One question that I have is why is it that at this

7    point in time, when we're near the end of discovery, that these

8    individuals now all of a sudden are needed for depositions?

9            MR. PIERS:  These individuals -- partly, your Honor,

10   it's because we haven't been able to get information from other

11   sources during the course of discovery.  Partly it is because in

12   some instances, the role of these individuals wasn't known to us

13   until we received discovery.

14           With regard to Mr. Lydon, who -- and, again, I've not

15   read their response and so I'm a bit arguing in the dark.  But

16   with regard to Mr. Lydon, we have raised repeatedly since our

17   first involvement in this case whether or not the defendants

18   would agree that Mr. Lydon would not testify as a witness in

19   this case.

20           I have not been able to receive that agreement, and

21   Mr. Lydon had contacts with the plaintiffs and Mr. Lydon also

22   has information with regard to when certain discovery was

23   initiated in the Fields case and communicated to the sheriff's

24   officials, which facts are relevant to the pattern of harassment

25   which our clients received.

1    Having gotten no assurance that Mr. Lydon's not going
2  to appear as a defense witness, running out of time with regard
3  to discovery, we felt that our only option was to request that a
4  subpoena be issued so that we could take this deposition.

5    Likewise, Messrs. Ryan and Flaherty and Shaughnessy.
6  We are in receipt of information, including sworn testimony,
7  that indicates that they also have information regarding the
8  timing of communications regarding actions in the Fields
9  litigation which are not confidential. They are matters of
10  discovery requests initiated by the plaintiffs in the Fields
11  litigation, so there is no confidential fact information running
12  from client to attorney or vice versa with regard to them.

13    And we are unable to get, other than by deposing these
14  men, firm answers as to when certain matters were communicated
15  to certain officials with regard to the proceedings in the
16  Fields case.

17    Mr. Remus, to move on to the fifth one, I guess, on
18  the list, has been alleged repeatedly to have led a group of
19  guards at the jail who were engaged in a massive pattern of
20  brutality. Those guards and his name appear repeatedly in the
21  IAD documents that we have been reviewing, and we have a number
22  of questions that we would like to ask Mr. Remus, who I believe
23  is no longer an employee of the Sheriff's Office, with regard to
24  the conduct of his team, the SORT team, and the investigations
25  regarding allegations of misconduct of inmates.

1      Lastly, Mr. James Sheahan, who I believe is one of the
2   brothers of defendant Sheriff Michael Sheahan, we are in
3   possession of sworn testimony indicating that Mr. Sheahan, who
4   was never, to my knowledge, an official of the Sheriff's Office,
5   made phone calls to the Internal Affairs Division in an attempt
6   to get IAD investigators to back off the investigations of
7   certain guards with regard to misconduct, which information
8   would potentially be very relevant to our policy claim.

9      That, in a nutshell, is our reasons for requesting
10  these depositions.

11     THE COURT:  I have read the written objections this
12  morning.  The question I have is can the defendants represent
13  that any of these individuals will not be defense witnesses in
14  this case?

15     MR. NAVARRE:  Judge, regarding Mr. Lydon, Mr. Fairley
16  was questioned regarding his conversation with Mr. Lydon.
17  Mr. Fairley admitted that he told Mr. Lydon he got down to SI2
18  after the incident and he didn't really see too much.

19     So we certainly have no intention of calling
20  Mr. Lydon.  I think in point of fact he could not be called as a
21  witness based on the fact that Mr. Fairley has admitted this in
22  his deposition.

23     MR. SOLBERG:  Your Honor, for defendant Sheahan and
24  company, we're not going to call him either, so we can say to
25  the Court that we don't intend to call Mr. Lydon, nor do we

1   intend to call any of the other people that plaintiffs seek to

2   depose -- seek you to allow them to issue subpoenas to take

3   their deposition.

4           And if your Honor would like -- your Honor said you

5   read our papers, so I don't want to restate those, your Honor,

6   but having said that briefly, your Honor --

7           THE COURT:  You don't have to restate them.

8           MR. SOLBERG:  All right.

9           THE COURT:  Do all defense attorneys agree that none

10  of these six people you intend to call?

11          MR. NAVARRE:  Yes, Judge.

12          MR. McGRATH:  Yes.

13          THE COURT:  With that understanding, the Court is

14  leery about going down the road of involving legal advisors

15  here.  I do think that plaintiffs have given me a sufficient

16  good-faith basis to allow the service of subpoenas for

17  deposition of Mr. Shaughnessy and Mr. Remus.

18          As to the other four individuals, I'm going to deny

19  without prejudice at this point allowing depositions of

20  Mr. James Sheahan, James Lydon, James Ryan or Brian Flaherty.

21  But the plaintiffs can proceed with Mr. Joseph Shaughnessy and

22  Richard Remus.  That will be the ruling.

23          MR. PIERS:  Very good, sir.

24          THE COURT:  I will then see you, and hopefully God

25  will be with me in trying to settle this case.  That's all I can

1  tell you.

2          MR. PIERS:  Your Honor --

3          THE COURT:  Thank you.   Yeah.

4          MR. PIERS:  One other matter very quickly.

5          You did grant understandably the motion of my

6  co-counsel to withdraw.

7          THE COURT:  Yes.

8          MR. PIERS:  And without going into the reasons for

9  that motion --

10          THE COURT:  Jenner & Block.

11          MR. PIERS:  Jenner & Block.  That would be the law

12  firm.  And with regard, going into the reasons which are

13  certainly irrelevant at this point, their departure from this

14  case has caused pretty serious hardship on us in terms of

15  resources.  We are looking.  We are in the process of talking to

16  two firms right now.

17          The part of the discovery that we are about to get

18  very seriously into has to do with the policy claim, which is

19  exactly the part of the case that I brought them in for.

20          I may be back asking you for an adjustment on

21  discovery in light of the loss of my co-counsel.

22          THE COURT:  I understand.

23          MR. PIERS:  I'm not doing that yet.

24          THE COURT:  I would think the appropriate time to do

25  that would be after we all make a good-faith effort to try and

1  resolve this.

2       MR. PIERS:  I would agree.  That's what I was going to

3  propose.

4       And lastly, if I may, your Honor, on behalf of all the

5  attorneys in the case, please accept our condolences on your

6  loss.

7       THE COURT:  Thank you.

8       MR. ROACHE:  Yes, your Honor.

9       THE COURT:  Thank you.

10      MR. NAVARRE:  Thanks, Judge.

11      THE COURT:  Good luck to you.

12      MR. PIERS:  Thank you, sir.

13   (Which were all the proceedings heard.)

14                    CERTIFICATE

15   I certify that the foregoing is a correct transcript from

16  the record of proceedings in the above-entitled matter.

17

18  _____          _2-11-05_____
    Kathleen M. Fennell               Date
19  Official Court Reporter

20

21

22

23

24

25

# EXHIBIT C

**From:**      "D Duffy" <duffy@duffyandmundo.com>
**To:**        "'Jose Behar'" <JBehar@ghsltd.com>, "'Mary Rowland'" <MRowland@ghsltd.com>
**Date:**      4/27/2005 5:37:48 PM
**Subject:**   Fermaint

Jose / Mary --

I am canceling tomorrow's deposition as well as that of Officer
Bercasio.

I apologize for the late notice.

As you know, Officers Fermaint and Bercasio are named defendants in the
Fields case. I am told that the May 16 trial date is firm and that the
trial will likely last between two and three weeks. I neither wish to
interfere with their trial preparation, nor provide the plaintiffs'
attorneys in that case with additional deposition transcripts.

Both Officer Fermaint and Officer Bercasio can be made available on any
of the following dates after the completion of the Fields trial:

June 15, 16, 17, 21, 22, 23, 24, 28, 29, 30; July 1, 12, 19, 20, 21, 22.


Daniel P. Duffy

Duffy & Mundo, P.C.

208 West Washington, Suite 512

Chicago, Illinois 60606

T  (312) 782-7150

F  (312) 896-9318

If you are not the intended recipient of this e-mail, please call me
immediately at (312) 782-7150. Please do not forward, copy or otherwise
disseminate this e-mail. Also, please delete the message and destroy any
printed copies.

Note to clients: This e-mail may contain attorney-client privileged
communications, and the privilege may be lost if you forward or disclose
it to third parties. Please exercise due care. When in doubt, please
call me before distributing this message.


**CC:**        "'Matt Piers'" <MPiers@ghsltd.com>, "Solberg, Wallace C" <WSolberg@bellboyd.com>,
"Alastar McGrath" <alastar@mcgrathlawoffices.com>, <cmarkey@hinshawlaw.com>, "Griswold, Joel C"
<jgriswold@bellboyd.com>, <jmccutc@cookcountygov.com>, "Matthew Walsh II"
<MWalsh@hinshawlaw.com>, "Roache, John T" <jroache@bellboyd.com>, "'Mike Hayes'"
<mhayes@bellboyd.com>, "'Jim Navarre'" <jnavarre@hinshawlaw.com>

# EXHIBIT D

1            IN THE UNITED STATES DISTRICT COURT
2          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

3

4  ROGER FAIRLEY and RICHARD      )
    GACKOWSKI,                 )

5             Plaintiffs,  )
    -vs-                  )

6                         )
    DENNIS ANDREWS, Supt.; EDWARD )  Case No. 03 C 5207
7  BYRNE, Lt.; PATRICK LOIZON,   )
    Sgt.; EVAN PERMAINT, Ofc.;   )  Chicago, Illinois
8  NORBERTO BERCASIO, Ofc.; FRED )  December 28, 2004
    COFFEE, Ofc.; RONALD PROHASKA, )  10:30 a.m.
9  Ofc.; GREGORY ERNST,        )
    Investigator; SAUL WEINSTEIN, )
10 Former Chief Investigator; TIM )
    KAUFMAN, Chief Investigator;   )
11 GABRIEL OCHOA, Ofc.; JUAN     )
    DIAZ, Chief Investigator, in  )
12 their individual capacities;   )
    MICHAEL SHEAHAN, Sheriff, in  )
13 his official capacity; and     )
    COOK COUNTY,              )
14             Defendants.  )

15           TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE RUBEN CASTILLO
16 APPEARANCES:

17 For the Plaintiffs:         MR. MATTHEW J. PIERS
                           MS. MARY M. ROWLAND
18                     Gessler, Hughes, Socol, Piers,
                           Resnick & Dym, Ltd.
19                     70 W. Madison St., Suite 4000
                           Chicago, Illinois  60602
20                     (312) 580-0100

21 Court Reporter:

22          KATHLEEN M. FENNELL, CSR, RPR, FCRR
              Official Court Reporter
23          United States District Court
       219 South Dearborn Street, Suite 2318-A
24            Chicago, Illinois  60604
           Telephone:  (312) 435-5569
25        email:  Kathyfennell@earthlink.net

```
 1   APPEARANCES:   (Continued)

 2   For the Plaintiffs:              MR. ROBERT L. GRAHAM
                                      Jenner & Block, LLC
 3                                    One IBM Plaza, 37th Floor
                                      Chicago, Illinois  60611
 4                                    (312) 840-8669

 5

 6   For the Defendant Byrne:         MR. JAMES P. NAVARRE,
                                      Hinshaw & Culbertson
 7                                    222 North LaSalle Street
                                      Suite 300,
 8                                    Chicago, Illinois 60601
                                      (312) 704-3000
 9
     For Defendants Andrews, Loizon,
10   Permaint, Bercasio, Coffee,
     Prohaska and Ochoa:              MR. ALASTAR S. McGRATH
11                                    Law Offices of Alastar S.
                                      McGrath
12                                    55 W. Wacker Dr., Suite 1000
                                      Chicago, Illinois  60601
13                                    (312) 907-0653

14
     For Defendants Ernst, Weinstein,
15   Kaufman, Diaz, Sheahan:          MR. JOHN T. ROACHE
                                      MR. JOEL GRISWOLD
16                                    Bell, Boyd & Lloyd, LLC
                                      70 W. Madison Street
17                                    Suite 3300
                                      Chicago, Illinois  60602
18                                    (312) 372-1121

19

20

21

22

23

24

25
```

1      (Proceedings heard in open court:)

2      THE CLERK:  03 C 5207, Fairley versus Andrews, status

3  hearing and motions.

4      THE COURT:  Good morning.  Sorry to keep you waiting.

5      MR. PIERS:  Good morning, your Honor.  Looked like you

6  had a few other matters to attend to this morning.

7      THE COURT:  Exactly.

8      MR. PIERS:  Matthew Piers, Robert Graham and Mary

9  Rowland on behalf of the plaintiffs.

10      MR. ROACHE:  Good morning, your Honor.  John Roache

11  and Joel Griswold on behalf of defendants Sheriff Sheahan,

12  Ernst, Weinstein, Diaz and Kaufman.

13      MR. NAVARRE:  Good morning, your Honor.  Jim Navarre

14  on behalf of defendant Lieutenant Byrne.

15      MR. McGRATH:  And Alastar McGrath on behalf of

16  defendants Permaint, Bercasio, Coffee, Ochoa, Prohaska, Loizon

17  and Andrews.

18      THE COURT:  Okay.  Where do you want to start?

19      MR. PIERS:  We have, I think, five motions pending in

20  front of you, not counting -- I don't know if there's status on

21  the rule to show cause with regard to Ms. Snyder, but there are

22  at least five other motions for you.

23      THE COURT:  Have there been any developments with

24  regard to the Ms. Snyder matter?

25      MR. ROACHE:  Your Honor, Ms. Snyder's counsel has

1  filed a response.  I believe our reply is due this Friday, and
2  then you were going to rule by mail on that issue.
3        THE COURT:  Okay.  That's fine.  Then let's start
4  wherever you want to start.
5        MR. PIERS:  If the ball is in my court, I'll start
6  with plaintiffs' motions.
7        We have two motions before you, your Honor.  Basically
8  a motion to compel depositions and a motion with regard to
9  documents.
10        With regard to the motion to compel depositions, which
11  we amended recently and as to both of which motions defendants
12  have filed responses, our position is basically as follows:
13        The Court granted previously on the 10th of November
14  our motion to require a deposition schedule to be submitted by
15  agreement of the parties, and indeed you gave us until
16  December 1.
17        We attempted in good faith to do that.  We were unable
18  to get a response from the defendants with regard to what dates
19  would be agreeable to them.  We filed a motion then on December
20  1st so that we did not drop the ball on this issue to the Court,
21  asking that a schedule that we proposed be ordered.
22        That evening, we received from the defendants a
23  unilaterally prepared list of proposed deponents and deposition
24  dates which covered 14 of the 18 people yet to be deposed on
25  that list.

1       We notified the defendants that we would scramble and
2 accommodate as best we could, and we are willing to live with
3 their schedule with a couple of minor revisions, flipping a
4 couple of the deponents. We still seek the depositions of the
5 remaining three witnesses and the one defendant. We ask that
6 they be ordered.

7       In addition, one of the deponents on the defendants'
8 list was proposed to be deposed about 24 hours after we received
9 the list. We notified them that we thought that was a little
10 unreasonable, and we want to reschedule that. So there are
11 really five additional depositions, if you count that one, that
12 need to be ordered.

13       In addition, because we really think that this was
14 wholly unnecessary, we have asked for fees and costs in the
15 making of the original motion and the amended motion. Frankly,
16 if we had gotten some response from the defendants following the
17 Court's order, neither motion would be presented to you.

18       THE COURT: The original motion for an order
19 compelling dates, you're going to withdraw that in favor of the
20 amended motion, right?

21       MR. PIERS: That's correct. We're living with their
22 schedule to a large extent.

23       THE COURT: So we'll reflect that. The original
24 motion for an order compelling defendants to produce witnesses
25 for depositions on dates is going to be withdrawn in favor of

1  the amended motion.

2  Defendants want to say anything more other than what

3  you've put in writing on the amended motion?

4  MR. ROACHE:  Your Honor, if I could just briefly

5  address this issue, and as we said in our response brief, this

6  is the one-minute motion.  We sent a letter to plaintiffs'

7  counsel at 5:01 on December 1st proposing dates for I think 18

8  of the total of 43 depositions they're seeking to take in this

9  case.

10  At 6:30 that evening, we received their motion to

11  compel a deposition schedule.  We sent them a letter asking if

12  they would withdraw their motion, given the fact that we had

13  proposed a schedule and given it to them.  They refused to do so

14  and, in fact, filed an amended motion, as Mr. Piers said, now

15  seeking sanctions against us, I guess, for sending them a letter

16  that proposed the schedule.

17  We think that the amended motion was brought in bad

18  faith, and we would like sanctions for the amount that it cost

19  us to respond to these motions, your Honor.

20  THE COURT:  The only problem with your response to

21  their original motion is you didn't provide dates for all of the

22  deponents.  Was there a reason for that?

23  MR. ROACHE:  Your Honor, just at that point, we

24  couldn't schedule the two -- the three remaining people.  Two

25  work for the Sheriff's Police, one works for the Inspector

1  General's Office.  It was just taking more time to schedule
2  those depositions.
3      We -- we can either live with the dates they've
4  proposed or agree on a date.  We just hadn't received
5  confirmation from those three individuals.
6      For all the correctional officers they sought, as well
7  as the defendants, we had given them dates.
8      THE COURT:  At this point, I'm going to grant the
9  amended motion and order that Mr. Johnson appear on December
10  10th at 10:00 a.m.; that Mr. Zychowski, Z-Y-C-H-O-W-S-K-I,
11  appear on the 14th at 10:00; Mr. Raher, R-A-H-E-R, appear on
12  January 4th, '05 at 10:00 a.m.; Mr. Barsch, B-A-R-S-C-H, appear
13  on January 6th at 10:00 a.m., and that Sheriff Michael Sheahan
14  appear on the dates of January 13th through the 14th at 10:00
15  a.m.
16      That will be the order.  I'm not going to grant the
17  fees, given the circumstances; but I will tell you if this
18  continues, we will start getting into fee awards, which I think
19  is going to be unfortunate.
20      MR. ROACHE:  Your Honor --
21      THE COURT:  Let's go on to the next motion.
22      MR. ROACHE:  Could I address just one issue on Sheriff
23  Sheahan?  As we've mentioned, we would like to file a motion for
24  protective order, given the claims in this case, that there
25  aren't any allegations of any personal involvement by Sheriff

1    Sheahan.

2              THE COURT:  Okay.

3              MR. ROACHE:  We don't think his deposition is

4    necessary or warranted.

5              THE COURT:  You have not filed that in writing, but I

6    will tell you this:  Given what I know presiding over this case,

7    I think Mr. Sheahan has to sit for his deposition.

8              So I don't think that protective order, if you

9    bothered to put it in writing, is going to be granted, and I

10   wouldn't bother doing that.  I think he needs to sit.

11             MR. ROACHE:  And you're ordering him to sit for two

12   days, is that correct, your Honor?

13             THE COURT:  That's correct.

14             Let's go on to your next motion, Mr. Piers.

15             MR. PIERS:  All right.  Your Honor, there's a lot of

16   detail to this one, and I'm going to sort of do it as a sort of

17   big picture --

18             THE COURT:  Go ahead.

19             MR. PIERS:  -- because it speaks as well to the status

20   that we're prepared to make to the Court this morning.

21             With regard to what we call the policy documents; that

22   is, Requests Nos. 1, 2 and 3 of the second request for document

23   productions, which seek documents relating to allegations of

24   mistreatment of inmates, including but not limited to excessive

25   force, IAD documents, complaints filed against officers for such

1   misconduct, other than the grand jury materials, which, as the

2   Court will recall, was the subject of an entirely different

3   subpoena which was frustrated and delayed by the defendants,

4   we've received almost nothing as we stand before you today.

5         After telling us that it would be an immense burden to

6   comply with this request that would take up hundreds of hours

7   and require a production of hundreds of documents, the

8   defendants now say that the grand jury documents are everything

9   with regard to the last five years of the time period, an

10   assertion that the Court has already ruled is incorrect.

11         And with regard to the earlier three years of the time

12   period, the time period the Court ordered was co-extensive with

13   the employment period of the two plaintiffs, we were told that

14   there were only two boxes of documents, which we were a little

15   surprised about. We got those late yesterday, and Mr. Graham's

16   associates worked into the night reviewing them so that we could

17   talk to you about them today. I've not seen them.

18         Suffice it to say that those two boxes are largely not

19   responsive at all to Requests Nos. 1, 2 and 3. They contain a

20   few documents which appear to be summaries of some things that

21   may be pertinent to Request Nos. 1, 2 and 3. Entire years are

22   missing still from the time period; and most of what's in those

23   two boxes are documents which should have been produced, some of

24   them which should have been produced prior to our law firm's

25   involvement in this case, such as investigative files regarding

1    the incident in the Special Incarceration Unit II in July of

2    2000, which were either overdue or documents that we were

3    seeking and which are the subject of our motion to compel.

4         So we don't have what we've asked for in our opinion.

5    We are highly suspicious with regard to the representations that

6    what they have is contained in some subset of those two boxes,

7    given their past representations to us and to the Court of the

8    immense burden of complying with this request. I mean, really,

9    if it was a matter of giving us the grand jury documents and a

10   stack of a couple of inches, I can't quite imagine what the

11   burden would be in production, since the grand jury documents

12   were already segregated and in the possession of the grand jury.

13       With regard to the other documents on our motion, with

14   regard to Interrogatory No. 7, which is a document request

15   because of the way the defendants responded to the

16   interrogatory, we sought lawsuits, charges and claims against

17   the named defendants. After initially opposing this request,

18   they ultimately referred us to a handful of documents among the

19   documents which they produced to us.

20       We asked them whether those were the entirety. They

21   responded that that was all that they were aware of. And then

22   it turned out during the depositions, and from an independent

23   search of court records, that there are indeed many other legal

24   claims against these defendants.

25       We ask that the defendants be inquired. We cannot

1  believe that the Sheriff's legal department doesn't have a list

2  of when its personnel get sued in their official capacity as

3  correctional officers. We want Interrogatory No. 7 either

4  answered in words or we want fully compliant documents.

5  Next we seek financial records from the defendants,

6  another matter that we have already moved to compel and that the

7  Court has already granted our motion to compel on.

8  Following the Court's ordering of the financial

9  documents, we were approached by one or more of the defense

10  counsel who said our clients are getting it together, these

11  documents. We're not sure how quickly. If we get them to you

12  in advance of their depositions, is that sufficient? I asked

13  that they -- I agreed to that at that time and said try and give

14  me a week so that I'm not too inconvenienced.

15  Other than defendant Byrne, who did promptly produce

16  his financial records, we've received no financial records with

17  regard to the defendants. We have another defendant's

18  deposition tomorrow, defendant Prohaska. We have no financial

19  records on that defendant.

20  Now, we can always go back and redepose, and I don't

21  even mind a telephonic redeposition; but the fact is, your

22  Honor, this case, which, you know, the Court once characterized

23  accurately as a two-plaintiff lawsuit is a very complicated

24  factual matter because of the numbers of incidents and the time

25  span that it covers. And we don't think it's fair that we

1   should have to go back and re-do it, particularly for what is a
2   relatively mundane matter.  I mean we intend to question these
3   defendants for ten minutes about their financials in the course
4   of their depositions.  These are not men of great means.  We
5   need to satisfy ourselves of that and move on.  And, frankly, we
6   might be able to obviate questioning if we'd gotten the
7   documents that the Court ordered produced, but we haven't, and
8   we think we're entitled to them.

9           There is a letter of November 4th that I wrote to
10  defense counsel, which is appended to our motion, which covers a
11  number of significant holes in document production, all of which
12  were matters that we have sought in a number of oral conferences
13  prior to that letter.  That letter was my effort to sort of
14  catalog everything for them so that there was a checklist and
15  things would not fall through the cracks.

16          Some of them date back to the very first responses we
17  received from the defendants after we entered into this case.
18  Certain documents were withheld on privileged grounds.  The
19  assertions of privilege appeared to be insufficiently made.
20  That is, the log didn't really give us a chance to evaluate it;
21  and to the extent that they were revealed, at least in one
22  instance, it appeared that the privilege was entirely
23  inappropriate, as they were claiming a privilege on an
24  evaluative memo prepared by an Assistant State's Attorney who
25  represents none of the parties in this case and as to whom there

1  could be no attorney-client privilege and as to whom they have

2  no right to assert work product since only the State's

3  Attorney's Office presumably could do that.

4        They have now said in the response that we received

5  late yesterday, indeed I got it and sent it up to my office

6  because I was in the middle of presenting Mr. Fairley at his

7  deposition yesterday, that they will supplement that privileged

8  log.

9        Well, your Honor, I've been seeking that for months.

10  I've been seeking it in writing in an effort to obviate this for

11  one month, and my response to that is to ask defense counsel and

12  the Court, when? When will I receive these documents? It is no

13  longer sufficient, given the difficulties that we have had in

14  discovery, to simply say we're gonna because we're running out

15  of time.

16        They have all likewise indicated that the quarterly

17  assignment documents -- punitive assignments is a significant

18  issue in this case. We have sought these for months as well.

19  They have also said in the same pleading they will produce

20  those. My response is the same: When?

21        We have sought the assignment logs for the Special

22  Incarceration II Unit for the second half of the year 2000.

23  That would be the months immediately following the so-called SI

24  II incident.

25        Again, we have been told that they will be produced.

1 We were told that yesterday. When? These are materials that we
2 should have had for the depositions that we've already been
3 taking and the depositions that have now been scheduled both by
4 agreement and by court order.

5 We are missing our clients' performance appraisals
6 from their personnel records. The other employees whose
7 personnel records we've looked at have performance appraisals.
8 For some reason, Messrs. Fairley and Gackowski have none, as
9 well as two of the defendants. We have repeatedly asked the
10 defendants to search, to tell us if they are lost forever, if
11 they have been destroyed, if they have been misfiled, but to
12 produce them. Obviously, in an employment case, the employer's
13 evaluation of the performance of the plaintiff is a classic
14 issue of relevance.

15 We have identified a number of documents produced
16 which are illegible or appear to be improperly redacted. We
17 have now been told in the response filed yesterday that we can
18 come look at originals. At this point, your Honor, plaintiffs'
19 position is just give them to us. Just photocopy legible copies
20 and give them to us. Don't invite us over to look in the entire
21 document repository and hunt and peck and see what the originals
22 are.

23 Or tell us if the originals are illegible, just tell
24 us the originals are illegible so that we don't have to play
25 this -- this lawyers' jousting game over these documents.

1     We are missing IAD files. We have identified the IAD
2  files that we are missing, or actually IID I think is the
3  correct initials, Internal Investigations Division.

4     The response that was filed yesterday says simply that
5  documents responsive to the request have been produced. It
6  doesn't say that the documents that we have sought were
7  produced. They were not. It doesn't say that they don't exist.
8  We don't know whether or not they do. It is -- it appears to be
9  a neatly worded evasion of what we are asking for.

10     Next, your Honor, we raised FRCP 34(b) compliance with
11  regard to the Jean Snyder documents. The Court will recall
12  defendants have sought, and there's a pending motion with regard
13  to it, Ms. Snyder's deposition. It remains a bit of a mystery
14  to us why the defendants believe that Ms. Snyder is relevant to
15  Messrs. Fairley and Gackowski's lawsuit, but so be it. The
16  Court has ordered it.

17     We asked and received the Court's authority to request
18  for those documents which pertain to the Sheriff's decision to
19  call for a criminal investigation into Ms. Snyder. We were told
20  we have those documents. We were told -- we then inquired which
21  documents among the several thousand you've produced. The
22  response that we got is, well, we're in compliance with Rule
23  34(b) because we have produced them in the manner in which they
24  are regularly kept in our business offices.

25     Frankly, your Honor, having looked at the documents

1 │ that were produced, I very much doubt that that assertion is
2 │ true; but whether or not it's true, we can't ascertain which
3 │ documents, if any, are pertinent to what is Request No. 13 in
4 │ plaintiffs' second request for production. And we would ask --
5 │ as a matter of courtesy to the defendants, we ask as a matter of
6 │ oversight of discovery to the Court, that they designate which
7 │ among the documents they have produced pertain to Sheriff
8 │ Sheahan's request and that they do so prior to Ms. Snyder's
9 │ deposition so that we can understand what it is we're talking
10 │ about at that deposition.

11 │         With regard to Request No. 6 as to which defendants
12 │ partly responded and partly -- that's Request No. 6 in the
13 │ second set -- and partly complied, those have to do with
14 │ requests by correctional officers for legal representation and
15 │ charges brought against them.

16 │         We have asked them simply whether they are withholding
17 │ any documents based on privilege. We have asked them
18 │ repeatedly. We have received no response. We ask that we be
19 │ given a response.

20 │         I think that covers everything that's in that motion.
21 │ Mary, can you --

22 │         MS. ROWLAND: I think that's it.

23 │         MR. PIERS: All right. That's our statement for the
24 │ Court.

25 │         THE COURT: Do you want to supplement your response in

1   writing?  The defendants?  I did review your written response.

2       MR. ROACHE:  Yes, your Honor, and if I could just

3   comment on a few things that Mr. Piers said in addition.

4       In their response, they say that we have not produced

5   any documents responsive to Requests 1, 2 and 3 of the second

6   set of document requests.

7       Your Honor, we've produced over 200,000 documents, the

8   majority of which are responsive to Requests Nos. 1 and 2.

9   We've provided to you documents under seal that describe the

10  documents that were contained in there.

11      THE COURT:  That's the grand jury material?

12      MR. ROACHE:  Yes, your Honor.  The documents that were

13  accumulated from 1998 to May of 2003 included all complaints,

14  grievances, IAD reports and "any documentation indicating

15  staff-to-detainee physical contact for the years 1998 to May

16  5th, 2003, whether reported by an employee of the CCDOC or an

17  inmate."

18      We also --

19      THE COURT:  Those were produced on the 1st of

20  December?

21      MR. ROACHE:  Yes, your Honor, and they were made

22  available for review on the 16th; and if you recall, Mr. Piers

23  insisted that we keep the box sealed so that he knew that they

24  were in the same shape as when we produced them to the grand

25  jury.  You ordered us on the 23rd to produce them by the 1st.

1  We reviewed them over Thanksgiving holiday, produced all
2  91 boxes on the 1st.
3          I have one of the 91 boxes here with me, your Honor.
4  It's a box full of claims of excessive force that were reported
5  either by inmates or correctional officers. These documents
6  have been in plaintiffs' possession now for more than a week.
7          For them to say that we haven't produced any
8  responsive documents in response to Request No. 1 and 2 I think
9  is just an outright misrepresentation, your Honor.
10         The other issues that were raised, I believe we've
11 produced all IAD files related to any of the defendants. If
12 there are certain ones that Mr. Piers is still asking for, I
13 don't know which ones those are. I believe, again, that we've
14 produced them in relation to all the defendants.
15         In relation to Interrogatory No. 7, again, I think all
16 of the documents that were produced to the grand jury, the over
17 200,000, include every complaint that was filed against the
18 Sheriff's Office or anyone in the Sheriff's Office for the years
19 1998 to 2003.
20         I will look and see if we have any other information
21 about any complaints that would have been filed against the
22 defendant; but, again, I think they're in there. I'm glad to
23 supplement Interrogatory No. 7 and specifically identify each of
24 those. I had a conversation with plaintiffs' counsel, where
25 they told me they knew of others. I asked them if they would

1    identify what they were. I'd be glad to see if we had any

2    additional documentation. They have not identified those.

3            In relation to the Ms. Snyder issue, your Honor, I

4    think our obligation is to produce the documents as they are

5    kept in the ordinary course. We've produced that. They've

6    asked for what we believe is to be an absurd amount of

7    documents. We've produced more than 230,000 documents, and we

8    don't think it's our obligation to go back and identify

9    specifically in response to each request which documents are

10   responsive.

11           THE COURT: What about the financial documents of the

12   defendants?

13           MR. ROACHE: Mr. Piers is exactly right. We agreed

14   and we will produce for our defendants -- I don't believe we've

15   gotten within a week of any of those defendants. We will

16   produce the financial documents for defendants Kaufman, Ernst

17   and Diaz.

18           MR. McGRATH: And, your Honor, Alastar McGrath on

19   behalf of Prohaska. Mr. Prohaska's documents were sent over

20   late but this morning to plaintiffs' counsel. We apologize, but

21   Mr. Prohaska has just moved. He's done everything he can to

22   either contact his financial people or himself --

23           THE COURT: When is his deposition scheduled?

24           MR. PIERS: Tomorrow.

25           MR. McGRATH: Tomorrow, your Honor. As I said, we

1    apologize to plaintiffs' counsel.

2            THE COURT:  Other than that one incident, are you

3    representing that this week schedule, seven days before

4    deposition, has been kept?

5            MR. McGRATH:  Yes, your Honor.  We will produce all

6    documents one week in advance of all our other defendants.

7            THE COURT:  What about the information contained in

8    Mr. Piers's letter of November 4th?

9            MR. ROACHE:  Your Honor, we will supplement our

10   privileged log.  We'll do it within seven days.  I apologize, we

11   should have done it sooner.

12           We are glad to do it.  If there are issues that he

13   wants to raise regarding any of the privileges asserted, we'd be

14   glad to do it.  We'd ask that the plaintiffs do the same.  Their

15   privileged log is scant as well.

16           I'm not sure, I know he mentioned the IAD files.  If

17   he tells me which ones he thinks involve the defendants and

18   excessive force claims, we'll look into it.  And if there are

19   any others, we'll produce them.  It was my understanding we had

20   produced them.

21           In some of the personnel files, I believe there were

22   references to IAD files that did not relate to the defendants.

23   I don't know why they were in there, but they were not -- they

24   weren't claims against those defendants.

25           I don't recall -- I think we've talked about

1  Interrogatory No. 7, financial documents.  The quarterly

2  assignment rotation records.  Your Honor, we've produced master

3  and daily.  Daily shows every day where each correctional

4  officer is assigned.

5          We're looking into whether we have quarterly

6  assignment rotation records; but, again, the daily records would

7  show every day where a correctional officer was assigned.

8          For the logbooks he's talking about, we produced part

9  of July and two months in 2002, as well as a logbook for every

10  day after 2000, and we are just searching for -- as soon as we

11  obtain the July, August, September and October, we'll produce

12  them.  And I can tell you within a week, we'll either produce

13  them or represent to Mr. Piers that we don't have those

14  documents.

15          THE COURT:  What about plaintiffs' second request for

16  production of documents No. 13?

17          MR. ROACHE:  I believe that is the Jean Snyder issue,

18  your Honor, that we discussed before.

19          THE COURT:  Okay.  And you have represented to the

20  Court that you've produced these documents but have not

21  designated.

22          MR. ROACHE:  We haven't identified them, that's

23  correct.  We've produced them but not identified them.

24          As for the redacted documents, again, we should have

25  responded sooner.  I'm glad to make another copy.  I believe

1  ours probably look like that; but I'll look and see if we have a

2  more legible copy and I'll produce those and we'll produce those

3  by the end of the day tomorrow.

4  　　　　　THE COURT:  Well, given the representations of counsel

5  here in open court, I am going to deny the motion to compel that

6  is structured as requesting an order to compel defendants to

7  comply with this Court's order dated 11-23-04 and respond to

8  long outstanding discovery requests.

9  　　　　　I am ordering that the defendants update their

10  privileged log within seven days of today's date.  So the motion

11  is partially granted, partially denied.

12  　　　　　Do you have any other motions?

13  　　　　　MR. NAVARRE:  Judge, on behalf of Lieutenant Byrne, I

14  have a motion to depose plaintiff Gackowski for an additional

15  two hours.  I think given the time span in this case, as

16  plaintiffs' counsel just indicated, it's very complicated.

17  There are numerous factual issues, and the type of damages

18  they're seeking, it certainly is called for.  And I'm simply

19  asking for two hours to depose Mr. Gackowski on behalf of my

20  client.

21  　　　　　THE COURT:  He has -- has his deposition started on

22  November 18th, is that correct?

23  　　　　　MR. PIERS:  He's completed two full days of his

24  deposition, your Honor.  When they told me they needed

25  additional time, I told them that I would wait until the end of

1   day one in order to respond to their request that they needed
2   more than the Federal Rules of Civil Procedure allow.  But I
3   indicated, as I think I have been, that I would be reasonable
4   with regard to my response and that what I really wanted was to
5   see that the time had been productively spent.

6           I would say that a third to a half of the questions on
7   the day one were objected to as asked and answered by me, as I
8   was producing Mr. Gackowski.  But be that as it may, I agreed to
9   produce him for a second day, which I did.

10          I admonished the defendants at the beginning of day
11  two and again at midday day two that I was not inclined to bring
12  him back for a third day unless, of course, you tell me I'm
13  going to, in which case I will.  But that, therefore, I
14  suggested strongly that the defendants consider going out of
15  order.  I would have no objection if counsel for other
16  defendants wanted to come in and then counsel for -- who started
17  the interrogation completed, as long as they weren't asking
18  repetitive questions.  But I really thought, complex or not,
19  that two full days is ample time if well used.

20          We have now spent those two full days.  As far as I
21  know, we haven't even completed the questioning of the first
22  interrogator, of counsel from Bell Boyd; and in addition to the
23  two hours asked for by Lieutenant Byrne's counsel, the counsel
24  for the remaining defendants is asking for three more hours.

25          And if these are lawyers' hours, what we are really

1   being asked to do is to produce him for an entire 'nother day.
2   We don't think that that's necessary or appropriate.  And the
3   same issue, your Honor, in anticipation I suspect will arise
4   with Mr. Fairley who completed day one, we are going to resume
5   his deposition as soon as we're through with you today.  And,
6   again, I've told them, you know, ask -- two days is a lot of
7   time.  Use the time wisely.  I don't think that that's been
8   done.

9       MR. McGRATH:  Your Honor, Alastar McGrath on behalf of
10  the other defendants.  We've actually requested three-and-a-half
11  hours, which equals about a half an hour a defendant.

12      I think counsel's representations about a third to
13  half being objected to as asked and answered is incorrect.  I
14  think part of the problem, your Honor, was with counsel's
15  objections were speaking objections with his client.

16      I guess as we sit here today, counsel has asked for
17  two days for Sheriff Sheahan alone plus additional days for each
18  of the defendants.  I don't think it's much to ask for a half an
19  hour for each of us.

20      MR. PIERS:  May I respond, your Honor?
21      THE COURT:  Go ahead.
22      MR. PIERS:  It is not my practice to engage in
23  speaking objections during depositions.  I did not engage in
24  such objections during Mr. Gackowski's deposition; and I hope,
25  counsel, that you're prepared to submit to the Court some

1   evidentiary support for the assertion you just made.

2        MR. McGRATH:  Your Honor, I was kind of hoping --

3        THE COURT:  No, we can stop.  I don't have the

4   transcript of these depositions.  I have ordered Sheriff Sheahan

5   to sit for two days, at least to appear.  Hopefully, it won't be

6   necessary.  Hopefully, one day is enough.

7        Again, given what I know about this case, the scope of

8   it, as well as the issues in the case, the number of defendants

9   in this case, there's some unusual factors in play, I will order

10  that defendant -- I mean plaintiff Gackowski sit for an

11  additional half day for all defendants, and that will be the

12  order of this Court.

13       Now, I'm hoping that doesn't occur with plaintiff

14  Fairley.  It might unless I send you out of here at a reasonable

15  time, which this is not a reasonable time.  That's all I'm going

16  to say.

17       Do we have anything else we need to take care of?

18       MR. PIERS:  There is -- I'm sorry.

19       MR. ROACHE:  One other motion, and just on the Fairley

20  deposition, your Honor.  Obviously, it's not going to start

21  until probably noon.

22       THE COURT:  Right.  Given that, I'll allow the extra

23  time, the same as plaintiff Gackowski.

24       MR. McGRATH:  Thank you, Judge.

25       MR. PIERS:  And we're prepared to work into the

1   evening tonight, your Honor, as well to try and get as much

2   done.

3        THE COURT:  Well, I think we have to be reasonable to

4   the deponents, too.  That's all I'm going to say.

5        MR. McGRATH:  Thank you, your Honor.

6        THE COURT:  Anything else?

7        MR. PIERS:  Medical records.

8        MR. ROACHE:  I believe the last motion that's up, your

9   Honor --

10       THE COURT:  Yes.

11       MR. ROACHE:  -- is we've sought the medical records of

12  the plaintiffs.  Plaintiffs' counsel has produced what I

13  believe, and I'd just like confirmation they've produced

14  everything except for one page that they've redacted, and we

15  don't think it's appropriate for them to redact it.  We think,

16  given the allegations in this case and that the plaintiffs have

17  put into question --

18       MR. PIERS:  I don't mean to interrupt you, but I have

19  received yesterday my client's permission to produce that

20  redacted page, so I can now obviate this.  I'm sorry.  I don't

21  mean to cut you off, John --

22       MR. ROACHE:  No, absolutely.

23       MR. PIERS:  -- this came up during the deposition, and

24  I spoke with Mr. Fairley about it.  It has absolutely nothing to

25  do with this case, but we don't care.

1        So you can have it. What we do object to is the

2    request in that motion that there be subpoenas served on the

3    medical providers. If they don't believe us or believe the

4    medical providers that we have produced everything, I have no

5    problem with them serving subpoenas on the medical providers.

6    We would like them returnable to us, just in case there are

7    inappropriate and confidential matters in those medical records

8    so that we could look at them and discuss them with defense

9    counsel.

10        I don't even know if that's even still at issue, given

11    the fact that there was only one page that we withheld or

12    redacted; but if it is, just out of courtesy to these men with

13    regard to what may be private medical matters, we'd ask the

14    chance to look at them first before the defendants.

15        MR. ROACHE: If Mr. Piers is confirming everything

16    that they've received except for the one redacted page has been

17    produced to us, is that correct?

18        MR. PIERS: That is correct.

19        MR. ROACHE: I'd ask that our motion be entered and

20    continued to our next status so that I can just review and make

21    sure that those are all the doctors that we would have sought to

22    subpoena.

23        THE COURT: Okay. Rather than do that, we're going to

24    withdraw the motion at this point. I'll let you produce a new

25    motion, but it sounds to me it's going to be unnecessary.

1        Have a good day.

2            MR. ROACHE:  Your Honor --

3            THE COURT:  Yeah.

4            MR. PIERS:  Nice try, but --

5            MR. ROACHE:  -- another issue that we raised at our

6    last status but didn't address was the issue of experts and

7    experts disclosure.

8            What we'd ask for is that there be a staggered, where

9    plaintiffs will identify their experts first and then we be

10    given another 30 days to identify any of our experts.

11            I don't know what dates you'd have in mind for that,

12    and I haven't spoken to Mr. Piers about this issue yet.

13            MR. PIERS:  We are before you on a Wednesday instead

14    of a Tuesday because we're really set for status, not motions.

15            THE COURT:  Right.

16            MR. PIERS:  If I may address status.

17            The Court tasked us to come back and report to you I

18    believe as follows:  What schedule we would propose to complete

19    preparation of this case without moving the trial date.

20            THE COURT:  Okay.

21            MR. PIERS:  In light of the difficulty that we have

22    had receiving these documents, I can't, in good faith, do that

23    to you.

24            Your Honor, again, I respectfully request the Court to

25    consider the trial date that the Court has set.  I know that

1  this is an '03 case. As a practical matter, it's a midyear '04

2  case in terms of when people got involved and rolled their

3  sleeves up.

4  THE COURT: I understand. I understand what you're

5  saying. I'm not going to decide this today. I will tell you

6  this: We don't have another status date set, right?

7  MR. PIERS: That's correct, sir.

8  THE COURT: Okay. I'm convinced now we're probably

9  going to have to move this trial date. I'm going to let both

10  sides submit to me what you think is an acceptable schedule that

11  includes the trial date moving to a reasonable point, not

12  sometime that's way off into the future of '0 -- you know, some

13  date that you think is just not going to be sellable to me.

14  I do have a complicated trial schedule, as you

15  probably heard from just sitting through this morning's call.

16  I'm going to ask you to submit that, both sides, by January 10th

17  of '05. Hopefully you can agree.

18  I will tell you if you agree on a schedule, that will

19  have an impact and increase the probability that I'll just enter

20  it. If you cannot agree, then I'd like each side to submit, and

21  I will do what I think is reasonable.

22  MR. PIERS: Your Honor, can we inquire when you would

23  next have an opening on your '05 schedule for a civil trial that

24  I think two to three weeks, would you say that that's a

25  reasonable estimate of trial length?

1    MR. ROACHE:  I think that's right.

2    MR. PIERS:  I mean not to set it now, but so that we

3  can kind of work back off of something that's realistic on your

4  schedule, that might be helpful.  If you can't, we'll do the

5  best without it; but if you could give us that information, that

6  would be helpful.

7    THE COURT:  Well, resetting this to sometime in the

8  month of June could work.

9    MR. PIERS:  Okay.  That's helpful.

10    THE COURT:  I hate to have a summer trial, but that's

11  what I can tell you.

12    MR. PIERS:  That's helpful to know, sir.  Thank you

13  very much.

14    THE COURT:  Thank you.

15    MR. ROACHE:  Your Honor, I guess just one last

16  question.  We have a close of discovery of January 15th.  Is

17  that still the close of discovery, or do you want us to --

18    THE COURT:  It's still the close of discovery as of

19  today's date.

20    MR. ROACHE:  Do you want us to address that kind of

21  scheduling in the --

22    THE COURT:  I would prefer not, but if you need to, go

23  ahead and try.

24    MR. ROACHE:  Fair enough.

25    MR. PIERS:  Are we going to appear before you on the

1   10th or simply submit on the 10th?

2       THE COURT: You submit on the 10th, appear before me

3   on the 11th. Good point. 9:45.

4       MR. PIERS: Very good, sir.

5       THE COURT: Thank you.

6       MR. PIERS: Thank you.

7       MR. ROACHE: Thank you, your Honor.

8       MS. ROWLAND: Thanks, Judge.

9      (Which were all the proceedings heard.)

10                 CERTIFICATE

11     I certify that the foregoing is a correct transcript from

12   the record of proceedings in the above-entitled matter.

13

14   _____      12-14-04

15   Kathleen M. Fennell        Date
      Official Court Reporter

16

17

18

19

20

21

22

23

24

25

# EXHIBIT E

| | |
|---|---|
| **From:** | Jose Behar |
| **To:** | Alastar McGrath |
| **Date:** | 4/8/05 1:31PM |
| **Subject:** | RE: Deposition Dates |

Alastar:

That's fine. Let's plan on Fermaint for April 28, starting at 10:00. Get me a date for Bercasio next week and also let me know about the financial docs. I'll send a confirming letter to all defense counsel.

José

>>> "Alastar McGrath" <alastar@mcgrathlawoffices.com> 04/08/05 10:44AM >>>
Jose,

Fermaint is not available on the 14th. It has been difficult to get
dates where he is free for an entire day. In order to get him done as
quickly as possible, I would like to switch Fermaint to the 28th (as he
is free that day) and get you new dates for Bercasio. I can get you new
dates for Bercassio by early next week.

As for the document production, let me speak with Dan. Since he is
presenting these witnesses, he has been handling the document
production. I'll get you an answer by early next week.

Alastar

-----Original Message-----
From: Jose Behar [mailto:JBehar@ghsltd.com]
Sent: Wednesday, April 06, 2005 11:40 AM
To: alastar@mcgrathlawoffices.com
Cc: Mary Rowland
Subject: Re: Deposition Dates

Alastar,

We're confirmed to depose Bercasio on April 28 at 10:00. Please produce
his financial documents as soon as possible.

Are Thursdays the only days that Fermaint can be deposed? If that's
true, how about next Thursday, April 14? Let me know about that date.
In addition, I've received some unsigned copies of Fermaint's tax
returns that purport to be in response to our Third Request for the
Production of Documents. Will you be supplementing your response prior
to Fermaint's dep? Our document request also seeks financial
statements, bank statements and other documents not yet produced by you.
Let me know about that too.

José J. Behar
Gessler Hughes Socol Piers
  Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison St.
Suite 4000
Chicago, IL 60602

Direct Dial: 312.604.2614
Direct Fax: 312.604.2615
E-Mail: jbehar@ghsltd.com

>>> "Alastar McGrath" <alastar@mcgrathlawoffices.com> 04/05/05 03:31PM
>>>
Jose,

We would like to schedule Bercasio for Thursday, April 28, 2005. We
wanted to schedule Fermaint for Thursday, April 21, 2005. However, I
was just informed that Kaufman is scheduled for that day. Since I will
be out of town, Dan will have to attend Kaufman's deposition.
Therefore, we cannot present Fermaint on the same day. I'm currently
trying to get you a new date for Fermaint. I will send you a date
shortly. In the interim, please let me know whether you will be
available to take Bercasio's deposition on the 28th.

Alastar

Alastar Sean McGrath
Law Offices Of Alastar S. McGrath
AT&T Building
227 W. Monroe, Suite 2000
Chicago, Illinois 60606
312-907-0653(phone)
312-726-1093(fax)


CONFIDENTIALITY NOTE: This e-mail and any attachments are confidential
and may be protected by legal privilege. If you are not the intended
recipient, be aware that any disclosure, copying, distribution or use of
this e-mail or any attachment is prohibited. If you have received this
e-mail in error, please notify us immediately by returning it to the
sender and delete this copy from your system. Thank you for your
cooperation. Law Offices of Alastar S. McGrath

**From:**      Jose Behar
**To:**        alastar@mcgrathlawoffices.com;  D Duffy
**Date:**      4/26/05 10:03AM
**Subject:**   RE: Fermaint and Bercasio

Dan,

Alastar hadn't gotten back to me about Bercasio, but May 6 is fine.  I'll send a letter confirming the deposition.

Please produce the remainder of Fermaint's financials, including his W-2s and bank statements, by noon tomorrow, so that I'll have an opportunity to review them prior to his deposition.

José J. Behar
Gessler Hughes Socol Piers
  Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison St.
Suite 4000
Chicago, IL  60602
Direct Dial:  312.604.2614
Direct Fax:  312.604.2615
E-Mail:  jbehar@ghsltd.com


>>> "D Duffy" <duffy@duffyandmundo.com> 04/21/05 12:59PM >>>
Jose --

Alastar is out of town this week.  I believe he had proposed May 6 for Bercasio.

I will call Fermaint to ask for his bank records, et al.

-----Original Message-----
From: Jose Behar [mailto:JBehar@ghsltd.com]
Sent: 04/20/2005 9:53 AM
To: duffy@duffyandmundo.com; alastar@mcgrathlawoffices.com
Subject: Fermaint and Bercasio


Dan and Alastar:

Do you have a proposed date for Bercasio's deposition yet?  Also, I'm still waiting for a response as to whether you will be supplementing the production of financial records for Fermaint prior to his deposition next week.  Please get back to me a.s.a.p.

José J. Behar
Gessler Hughes Socol Piers
  Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison St.
Suite 4000
Chicago, IL  60602
Direct Dial:  312.604.2614
Direct Fax:  312.604.2615

E-Mail:  jbehar@ghsltd.com