IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROGER FAIRLEY and RICHARD GACKOWSKI, | ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | |
| SUPT. DENNIS ANDREWS, LT. EDWARD BYRNE, SGT. PATRICK LOIZON, OFC. EVAN FERMAINT OFC. NOBERTO BERCASIO, OFC. FRED COFFEY, OFC. RONALD PROHASKA, FORMER CHIEF INVESTIGATOR SAUL WEINSTEIN, CHIEF INVESTIGATOR TIM KAUFMANN, CHIEF INVESTIGATOR JUAN DIAZ, in their individual and official capacities, and SHERIFF MICHAEL SHEAHAN, in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 03 C 5207 |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiffs' motion for reconsideration of the Court's September 11, 2007 ruling granting Defendants' motion in limine #8. In the alternative, Plaintiffs move to stay the trial – scheduled to commence on October 9, 2007 – and to certify a question of law for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Court held a hearing on Plaintiffs' motion and the parties have briefed the relevant issues. The Court presumes familiarity with its prior orders and the Seventh Circuit decision in *Fairley v. Fermaint,* 482 F.3d 897 (7th Cir. 2007). For the following reasons, the Court denies Plaintiffs' motion for reconsideration and for certification for interlocutory appeal pursuant to Section 1292(b).

**I.      Motion for Reconsideration**

### A. Legal Standard

Because the Court's September 11, 2007, Minute Order granting Defendants' motion in limine #8 did not dispose of this case in its entirety, the Court reviews Plaintiffs' motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b). Under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders are "subject to revision at any time before the entry of judgment adjudicating all the claims." *See* Fed.R.Civ.P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"). Accordingly, under Rule 54(b), the Court may correct any manifest errors of law or fact in its September 11, 2007 minute order. *See Zurich Capital Mkt., Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (citation omitted).

### B. Procedural Background

On July 25, 2003, Plaintiffs Roger Fairley and Richard Gackowski, two former correctional officers who worked at the Cook County Jail, brought the present lawsuit alleging First Amendment retaliation and conspiracy claims, among others, against the Sheriff of Cook County and eight correctional officers, supervisors, and Sheriff's Office employees.[1]

On May 4, 2006, the Court granted Defendants' motion for summary judgment regarding Plaintiffs' conspiracy claim, namely, that Defendants conspired to deprive them of their constitutional right to free speech. The Court, however, denied Defendants' summary judgment motion concerning Plaintiffs' First Amendment retaliation claim and attendant *Monell* claim.

On May 30, 2006, the Supreme Court decided *Garcetti v. Ceballos*, ___U.S. ___, 126

---

[1] This case was reassigned to the Court on March 17, 2006.

S.Ct. 1951, 164 L.Ed.2d 689 (2006). The *Garcetti* Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 1960. On June 9, 2006, Defendants Dennis Andrews, Edward Byrne, Ronald Prohaska, Tim Kaufmann, Saul Weinstein, and Michael Sheahan filed a Joint Motion for Summary Judgment based on *Garcetti.*

Meanwhile, on May 18, 2006, Defendants Evan Fermaint, Noberto Bercasio, and Fred Coffey filed an interlocutory appeal with the Seventh Circuit based on the Court's denial of summary judgment on their qualified immunity defense. On December 20, 2006, the Seventh Circuit issued its opinion dismissing the appeal for want of jurisdiction. *See Fairley v. Fermaint,* 471 F.3d 826, 829 (7th Cir. 2006). On January 3, 2007, Fermaint, Bercasio, and Coffey filed a Petition for Rehearing and Petition for Rehearing En Banc to the Seventh Circuit.

On March 19, 2007, the Seventh Circuit granted Defendants' Petition for Rehearing. *See Fairley v. Fermaint,* 482 F.3d 897 (7th Cir. 2007). In doing so, the Seventh Circuit concluded that Defendants' appeal was timely, and thus reached the merits of Defendants' qualified immunity defense. The Seventh Circuit then concluded that Defendants' qualified immunity defense relied upon questions of fact to be resolved at trial. *Id.* at 902. In making its determination, the Seventh Circuit stated:

> Our conclusion that this appeal is timely does not mean, however, that the defendants are home free. Defendants' principal argument relies on *Garcetti v. Ceballos,* 126 S. Ct. 1951 (2006), which holds that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 1960. Defendants invoke *Garcetti* for the proposition that plaintiffs' speech in the workplace is not covered by the first amendment, so they are entitled to prevail even though their reactions

3

> to that speech are asserted to be extra-legal and reprehensible. Such responses
> may be actionable under state law in the wake of *Garcetti*, defendants allow, but
> cannot be treated as constitutional torts.
>
> Plaintiffs maintain, however, that defendants reacted adversely to two kinds of
> speech: not only statements made as part of their duties at work (the kind of speech to
> which *Garcetti* applies) but also to testimony that plaintiffs gave in inmates' suits.
> Assistance to prisoners and their lawyers in litigation is not part of a guard's official
> duties. To apply *Garcetti*, therefore, we would need to determine whether defendants
> reacted to plaintiffs' activities in litigation (they say not) and which of defendants' deeds
> can be traced to the litigation as opposed to events at work. Piecing out the state of the
> record, and drawing inferences from the evidence, is not allowed on an interlocutory
> appeal based on a claim of immunity. The role of an appeal under *Mitchell* and *Behrens*
> is to determine whether the legal principles that apply to public officials were clearly
> established at the time those officials acted; it is not to determine what the officials did in
> fact, for that would impinge on the jury's task.

*Id.*

On April 16, 2007, the Court denied Defendants' Second Motion for Summary Judgment based on *Garcetti* and denied Defendants' motion for reconsideration on May 7, 2007. The Court concluded that there were genuine issues of material fact for trial whether: (1) Plaintiffs assisted in the Fields litigation prior to their 2003 Fields depositions; and (2) Defendants retaliated against Plaintiffs based on such assistance. (R. 826-1, May 7, 2007, Minute Order at 2.)

### C. The Effect of *Garcetti*

The Supreme Court's opinion in *Garcetti* has had a significant impact on Plaintiffs' case. When Plaintiffs filed this lawsuit, they premised their First Amendment retaliation claims on speaking out while at work against alleged physical abuse of inmates by correctional officers at the CCDOC. Three years later, *Garcetti* "significantly limit[ed] First Amendment protection of public employees' speech." *Salas v. Wisconsin Dep't of Corrections,* 493 F.3d 913, 925 (7th Cir. 2007). In *Garcetti*, the Supreme Court held that public employees who make statements

pursuant to their official duties "are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 126 S.Ct. 1951, 1960. Because the majority of Plaintiffs' allegations pertained to speech made as part of their official duties, such claims are no longer viable under the First Amendment. The only speech in this case that remains protected after *Garcetti* pertains to speech and expressions regarding Plaintiffs "[a]ssistance to prisoners and their lawyers in litigation ...." *Fairley v. Fermaint,* 482 F.3d 897, 902 (7th Cir. 2007). Because Plaintiff Fairley's first deposition in the Fields Litigation took place shortly before he resigned and his second deposition occurred months after his resignation and because Plaintiff Gackowski's depositions in the Fields Litigation took place after he resigned, Plaintiffs' case is significantly narrowed.

Given the limits *Garcetti* has imposed, Plaintiffs now seek to expand their theory of the case to cover claims that the Seventh Circuit does not recognize. Plaintiffs' counsel argues that this new theory is an "outgrowth" of *Garcetti*. Specifically, Plaintiffs claim that from July 2000 – the date of the Fields incident at the CCDOC which subsequently resulted in the Fields Litigation – any harassment of Plaintiffs by Defendants was an effort to intimidate them and chill any future speech that is covered under the First Amendment, namely, any assistance to the plaintiffs in the Fields Litigation, even though Plaintiffs had not engaged in any protected speech at that time.

### D. Minute Order of September 11, 2007

Defendants motion in limine #8 sought to preclude the admission of a hand written memorandum written by Plaintiff Fairley. In addressing the motion, the Court stated:

> Plaintiffs correctly note that "the conduct at issue not only involves actions after Plaintiffs' depositions in the Fields Litigation, but also any adverse conduct related to

5

Plaintiffs' overall assistance to the Fields Litigation." Instead of setting forth any such adverse conduct related to the memorandum, Plaintiffs argue that Defendants "attempted to silence plaintiff Fairley (and plaintiff Gackowski) by intimidating them, so they would not reveal during the course of the Fields litigation what they knew about incidents of excessive force, specifically including the July 29, 2000 beating in the SI-2 Unit." According to Plaintiffs, because the memorandum contains speech that Defendant attempted to suppress through "intimidating and harassing Fairley from as early as 2000" is it relevant and admissible. Plaintiffs go too far.

....

It is clear that the First Amendment protects a public employee's right to speak as a citizen about matters of public concern under certain circumstances. *Garcetti v. Ceballos,* ___ U.S. ___, ___, 126 S.Ct. 1951, 1957, 164 L.Ed.2d 689 (2006). As the Seventh Circuit recently noted,

> *Garcetti* made it clear that public employees have no cause of action for First Amendment retaliation unless they were disciplined for speaking *as citizens* about a matter of public concern. 126 S.Ct. at 1958, 1960. When public employees make statements pursuant to their official duties, they are not speaking as citizens and "the Constitution does not insulate their communications from employer discipline." *Id.* at 1960. In other words, if Spiegla's statements to Schrader were made pursuant to her official duties as a correctional officer, it was not protected speech and she has no claim for First Amendment retaliation.

*Spiegla v. Hull* 481 F.3d 961, 963-64 (7th Cir. 2007). The protection applies to *speech*, not to future speech. *See Wernsing v. Thompson* 423 F.3d 732, 752 (7th Cir. 2005) ("In the retaliation context, speakers simply may not invoke the protections of the First Amendment based on unexpressed viewpoints or un-uttered thoughts"); *Remus v. Sheahan* 2006 WL 418654, at *5 n.11 (N.D. Ill. 2006) (citing *Wernsing,* 423 F.3d at 752-53) ("Plaintiff also alleges that Ryan and Sheahan were motivated by their expectation that plaintiff would not lie about having requested a full investigation. SAC ¶¶ 47, 53. Plaintiff, however, does not allege that he actually spoke out about there being a coverup. The retaliation claim cannot be based on speech that never actually occurred"). Further, an essential element of Plaintiffs' Section 1983 retaliation claim is that their speech was a substantial or motivating factor in the retaliation. *See Ashman v. Barrows*, 438 F.3d 781, 784 (7th Cir. 2006). Plaintiffs have not identified any case law – and the Court has found none – to support their theory that the First Amendment protects silence. While this memorandum is the type of speech that could be protected under *Garcetti* because it involves Plaintiff Fairley's assistance in ongoing litigation, Plaintiffs have not argued the necessary link between it and Defendants. Because Plaintiffs have failed to identify any evidence that Defendants knew of this memorandum and that it was a motivating factor in their alleged retaliated against Plaintiffs, the memorandum is not admissible. The Court is granting the motion without prejudice. If Plaintiffs can establish this evidentiary link at trial, they can ask the Court to revisit this issue.

(R. 970-1, Sept. 11, 2007, Minute Order, at 3-4.)

### E. Plaintiffs' Arguments

In their motion for reconsideration, Plaintiffs argue that the Court's in limine ruling was a manifest error of law because the Court concluded that Plaintiffs' silence prior to Defendants' alleged retaliatory conduct was not protected speech. *See Wernsing v. Thompson*, 423 F.3d 732, 873 (7th Cir. 2005) ("In the retaliation context, speakers simply may not invoke the protections of the First Amendment based on unexpressed viewpoints or un-uttered thoughts."). Plaintiffs' reconsideration motion goes beyond the Court's ruling on Defendants' in limine motion, however, and to the heart of Plaintiffs' theory of the case – a theory that Plaintiffs admittedly have had to modify since *Garcetti*. Plaintiffs now define their theory of the case as such: "[T]he First Amendment protects speech on matters of public concern which defendants had reason to believe plaintiffs would utter during their *Fields* testimony, and that the First Amendment therefore prohibited defendants from taking adverse actions against plaintiffs to prevent them from engaging in that protected speech." (R. 1000-1, Pls.' Mot. Recons. Reply, at 5.) Although Plaintiffs acknowledge that First Amendment retaliation claims require that a public employee's protected speech must precede a defendant's retaliatory conduct, they contend that this First Amendment claim is not a traditional retaliation claim. Instead, Plaintiffs are attempting to bring a derivative First Amendment retaliation claim based on the chilling of their protected speech without showing that any protected speech preceded Defendants' retaliatory harassment and intimidation.

> In support of this novel theory, Plaintiffs rely on Fourth Circuit case law:
>
> A chilling claim is essentially the derivative of a retaliation claim: if a public employer cannot fire, demote, or similarly punish a public employee for engaging

>in protected speech, the employer also cannot intimidate the employee into
>silence by threatening impermissible retribution.

*Ridpath v. Board of Governors Marshall Univ.,* 447 F.3d 292, 319 (4th Cir. 2006); *see also Edwards v. City of Goldsboro,* 178 F.3d 231, 246 (4th Cir. 1999) ("a public employer is prohibited from threatening to discharge a public employee in an effort to chill that employee's rights under the First Amendment.").[2] Plaintiffs admit that "[a]lthough it is true that in both these [Fourth Circuit] cases, the defendants knew or anticipated that the plaintiffs would engage in future protected speech because of previous related protected speech which had been retaliated against by defendants, nothing in the Court of Appeal's rationale suggests that a defendant's knowledge of a plaintiff's prior protected speech is a prerequisite for a First Amendment 'chilling claim.'" (R. 984-1, Pl.'s Mot. Recons., at 3.)

To establish a First Amendment retaliation claim, "a public employee must present evidence that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action." *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006) (citing *Spiegla v. Hull,* 371 F.3d 928, 935, 940-41 (7th Cir. 2004)). Meanwhile, although the Seventh Circuit has not recognized a separate, discrete claim for intimidation or chilling under the First Amendment, it recognizes that "harassment just as much as a formal discharge, may be actionable if it is designed to deter a public employee's free speech" and that "[g]overnment retaliation tends to chill an individual's

---

[2] Plaintiffs have called their proposed derivative claim more than one name. In their proposed jury instructions, Plaintiffs labeled this claim a "First Amendment Intimidation Regarding Fields Case Testimony." (R. 887-3, Pls.' Proposed Jury Instruction #36.) At the hearing on the present motion, Plaintiffs called their claim an "anticipatory" claim based on "intimidation of future speech." (Hr'g Tr. Sept. 18, 2007.)

exercise of his First Amendment rights."[3] *Massey*, 457 F.3d at 720; *see also Pickering v. Board of Educ.,* 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ("threat of dismissal from public employment" is "a potent means of inhibiting speech"). Nevertheless, the Seventh Circuit has never recognized a First Amendment public employee claim – whether you call it retaliation or not – in which the plaintiff's protected speech need not precede a defendant's actionable conduct.

Although Plaintiffs argue that whether their protected speech comes before or after Defendants' retaliatory conduct is irrelevant, they rely on cases where the protected speech occurred before the defendant's actionable conduct in support of their theory.[4] Plaintiffs, for example, rely on *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982), in which the protected speech involved a public employee's allegation that she was reprimanded for endorsing a

---

[3] The Court notes that last year a Colorado federal district court rejected a plaintiff's First Amendment "chilling" claim:

> To the extent the Amended Complaint could be read to allege separate claims for retaliation and chilling, I note that the parties focus on retaliation in their written arguments on the motion to dismiss. Further, I observe that Spagnuolo has not pointed to any Tenth Circuit or Supreme Court law clearly establishing a chilling claim separate and apart from a public employee retaliation claim. *Cf. Ridpath v. Bd. of Governors Marshall University,* 447 F.3d 292, 319 (4th Cir. 2006) ("A chilling claim is essentially the derivative of a retaliation claim: if a public employer cannot fire, demote, or similarly punish a public employee for engaging in protected speech, the employer also cannot intimidate the employee into silence by threatening impermissible retribution").

*Spagnuolo v. City of Longmont, Colo.*, No. 05 C 0729, 2006 WL 2594484, at *5 n.10 (D. Colo. Sept. 11, 2006).

[4] In the two unpublished Northern District of Illinois cases upon which Plaintiffs rely, the defendants reacted to plaintiffs' protected speech that occurred first. *See Munoz v. Chicago Sch. Reform*, 99 C 4723, 2000 WL 152138 (N.D. Ill. Feb. 4, 2000); *Klipfel v. ATF,* No. 94 C 6415, 1996 WL 566452 (N.D. Ill. Sept. 27, 1996).

candidate for public office. More specifically, subsequent to the plaintiff's endorsement of a political candidate, the defendants allegedly pursued a campaign of petty harassments. *Id.* In analyzing the plaintiff's First Amendment claim, the Seventh Circuit stated:

> It is true that a certain air of the ridiculous hangs over the harassment allegations, in particular the allegation that we quoted earlier regarding the birthday cake. But we cannot say as a matter of law that the exercise of First Amendment rights by public employees cannot be deterred by subjecting employees who exercise them to harassment and ridicule through selective enforcement of work rules. The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable. Yet even in the field of constitutional torts *de minimis non curat lex*. Section 1983 is a tort statute. A tort to be actionable requires injury. It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise- that if the Mayor of Springfield had frowned at Miss Bart for running for public office he would be liable for damages (unprovable, of course) under section 1983. However, more is alleged here – an entire campaign of harassment which though trivial in detail may have been substantial in gross. It is a question of fact whether the campaign reached the threshold of actionability under section 1983.

*Id.* (internal citations omitted).

Here, the parties do not dispute that a campaign of harassment is actionable under the First Amendment as *Bart* instructs, and Plaintiffs certainly allege more than petty or trivial harassing and intimidating conduct on the part of Defendants. *See Spiegla,* 371 F.3d at 941 ("a § 1983 case does not require an adverse employment action within the meaning of the antidiscrimination statutes, such as Title VII of the Civil Rights Act of 1964. Rather, "*[a]ny* deprivation ... that is likely to deter the exercise of free speech ... is actionable.") (emphasis in original) (citations omitted). Nevertheless – as in the Fourth Circuit cases – the *Bart* plaintiff's protected speech occurred first after which the defendants reacted. *See id.; see also Andrekus v. Board of Educ. Dist. U-46,* 02 C 3960, 2004 WL 2535274, at *7 (N.D. Ill. Sept. 28, 2004) ("To

10

establish First Amendment retaliation, a plaintiff must show that she engaged in constitutionally protected speech and that that speech was a substantial or motivating factor in the defendant's retaliatory action. By definition, the defendant's retaliatory actions must be in response to, *i.e.,* follow, the plaintiff's exercise of her constitutional rights.").

Plaintiffs also attempt to distinguish *Wernsing v. Thompson*, 423 F.3d 732 (7th Cir. 2005), which the Court relied upon in its in limine ruling. *See id.* at 752 ("plaintiffs are actually referring to speech which has not yet occurred, which, for First Amendment retaliation purposes, is no speech at all."). In *Wernsing*, employees at the Illinois Office of the Inspector General ("OIG") in the Department of Human Services ("DHS") sent two e-mails in November 2000 to the Inspector General, Odell Thompson, stating that they had concerns about the appointment of the OIG's Southern Bureau Chief and wanted to meet with Thompson. *Id.* at 737-38. Thompson did not respond to the plaintiffs' e-mails. *Id.* at 738. In December 2000, however, Thompson sent a letter to the e-mail signatories that the OIG staff was not authorized to communicate about the office's polices or operations directly to the DHS Secretary, to the press, or to any external agent except with the Inspector General's approval and consent. *Id.* at 738. This directive was repeated in a second communication that Thompson sent to all OIG employees. *Id.* In January 2001, one of the plaintiffs called Thompson about the directives after which he yelled at her and told her she was "walking down the road to getting fired." *Id.* at 739. Thereafter, the Inspector General attended a meeting of the Southern Bureau staff where he met with the e-mail signatories and asked them about their concerns. *Id.* at 739. They explained their concerns about the appointment of an individual for the Southern Bureau Chief. *Id.*

The *Wernsing* plaintiffs alleged that on the heels of the e-mails and correspondence with

11

Thompson, he committed several acts of retaliation for their inquiries and requests for a meeting. *Id.* In addition, the plaintiffs alleged a claim of unlawful prior restraint on speech based on Thompson's directive prohibiting unapproved discussions of OIG business. *Id.* at 740. The district court granted the plaintiffs' summary judgment motion on their prior restraint claim. *Id.* at 741. Furthermore, the district court denied the Inspector General's motion for summary judgment on the plaintiffs' retaliation claim concluding that the plaintiffs' e-mails to the Inspector General were constitutionally protected speech and there were material questions of fact remaining for trial whether the plaintiffs' protected speech was a motivating factor in the retaliatory conduct. *Id.* The district court also denied the Inspector General's qualified immunity claim concluding that it was clearly established that Thompson's alleged actions restricting and retaliating against the plaintiffs' speech on matters of public concern violated the plaintiffs' constitutional rights. *Id.* Thereafter, the Inspector General appealed the qualified immunity ruling. *Id.*

On appeal, the Seventh Circuit held that the Inspector General was entitled to qualified immunity on the plaintiffs' prior restraint claim because "it was not clearly established, at the time the pre-clearance directive was first issued (December 5, 2000), that such a directive constituted an unlawful prior restraint on speech." *Id.* at 747. The *Wernsing* court reasoned that

> while the constitutional limits of restraints applicable to the general public are well-settled, and while the Supreme Court has struck down formal statutory bans of certain speech activity by government employees, the prerogatives of a government supervisor in managing the communications of his own staff are far less clear. We emphasize that our analysis of qualified immunity here is focused specifically and exclusively on this kind of relatively informal supervisory directive aimed at close subordinates.

*Id.* at 748 (internal citation omitted).

12

The *Wernsing* court then turned to the Inspector General's qualified immunity defense concerning the plaintiffs' First Amendment retaliation claim and addressed whether the plaintiffs had established a deprivation of a constitutional right. The court analyzed the plaintiffs' claims under the *Connick-Pickering* test, concluding that the plaintiffs had failed to demonstrate that they engaged in speech on a matter of public concern. *Id.* at 751. Specifically, the Seventh Circuit concluded that because the plaintiffs' November 2000 e-mails did not articulate a particular viewpoint, grievance, or complaint – but instead just requested a meeting with the Inspector General – the e-mails did not constitute speech on a matter of public concern. *Id.* at 752. The *Wernsing* court further rejected the plaintiffs' argument that the court should consider the content of what the plaintiffs desired to communicate to the Inspector General, and that the court should focus its inquiry on the underlying speech that plaintiffs sought to bring to the Inspector General's attention, namely, their specific concerns involving the appointment of the Southern Bureau Chief. *Id.* The *Wernsing* panel reasoned:

> This line of argument is nonsensical. In their references to "underlying speech" that is "sought" to be expressed, plaintiffs are actually referring to speech which has not yet occurred, which, for First Amendment retaliation purposes, is no speech at all. This Court's precedents instruct that the **content** of the speech is the most important factor in determining the public concern element, not the inchoate intentions or views that the speaker privately holds.
> ...
> In the retaliation context, speakers simply may not invoke the protections of the First Amendment based on unexpressed viewpoints or un-uttered thoughts. Government officials are not mind readers. The fact that members of the OIG wanted to meet with the Inspector General about the rumored appointment of an unspecified person does not, by itself, constitute a matter of concern to the public.

*Id.* at 752-53 (internal citations omitted) (emphasis in original). The Seventh Circuit further noted that "otherwise unprotected speech does not suddenly attain protected status simply because it is animated by a viewpoint which, if actually expressed, might itself merit First

13

Amendment protection." *Id*. at 752.

Although the content of Plaintiffs' speech is not at issue here, the *Wernsing* decision is instructive to this Court's analysis of Plaintiffs' argument that their unexpressed speech prior to Defendants' intimidating or retaliatory conduct constitutes a violation of the First Amendment. Simply put, this Court cannot ignore the Seventh Circuit's conclusion that for First Amendment retaliation purposes "speech which has not yet occurred ... is no speech at all." *Id*. at 752; *see, e.g., Gross v. Town of Cicero,* No. 03 C 9465, 2006 WL 288262, at *10 n.3 (N.D. Ill. Feb. 1, 2006) ("simply being named as a potential witness in the *Moreno* case would not constitute protected speech. *See Wernsing,* 423 F.3d at 752 (speech that has not occurred, 'for First Amendment retaliation purposes, is no speech at all.')"). Furthermore, Plaintiffs have not given this Court any compelling reason to ignore this precedent.

Plaintiffs also contend that *Wernsing* supports their derivative intimidation/chilling claim because "the Seventh Circuit recognized that a § 1983 action would lie if a public employee's future protected speech is chilled by governmental supervisors, characterizing such a claim as a 'prior restraint claim.'" (R. 984-1, Pls.' Mot. Recons., at 5.) At the hearing on this motion, Plaintiffs' argued that *Wernsing* considered a "prior restraint harassment claim." (Hr'g. Tr. Sept. 18. 2007).

Plaintiffs' argument is misplaced for several reasons, especially because the language they rely upon concerns the Inspector General's argument on appeal "that plaintiffs lack standing to challenge his pre-clearance directive since they have not demonstrated any 'actual injury or any imminent threat of injury due to the directive.'" *Id.* at 743. More specifically, on appeal the Inspector General claimed that "in order to make out a concrete 'injury in fact' for standing

purposes, plaintiffs must have sought permission to speak, been denied, spoken out anyway and been subject to discipline." *Id.* The Seventh Circuit rejected the Inspector General's argument – "the hypothetical chain of events outlined by Thompson describes a First Amendment retaliation case involving post-hoc punishment for disfavored speech, not a prior restraint which seeks to limit expressive activity before it occurs." *Id.*

First and foremost, the *Wernsing* decision did not characterize an action pertaining to a public employee's future protected speech as a "prior restraint harassment claim." Instead, the Seventh Circuit was analyzing the *Wernsing* plaintiffs' prior restraint speech claim based on the Inspector General's internal e-mails. As the court explained:

> We note at the outset that the plaintiffs, in challenging an internal e-mail as a "prior restraint" on speech, advance a somewhat unconventional claim. Prior restraints frequently arise in the form of judicial injunctions against certain types of speech (to which the collateral-bar rule applies), or, perhaps less commonly, in the form of formal statutes or regulations barring or constraining certain expressive activity. *But see Crue v. Aiken,* 370 F.3d 668, 679-80 (7th Cir. 2004) (characterizing a university president's internal pre-clearance directive, disseminated via e-mail, as a prior restraint on speech). Here, since both sides have used the phrase "prior restraint" in marshaling their arguments, we will also use that term. However, we offer no view as to whether, as a general proposition, an e-mail directive should always be analyzed in the same way as an injunction, statute or a formal regulation.

*Id.* at 743 n.3.

In addition, the *Wernsing* court's reference to the Inspector General's "hypothetical chain of events" describing "a First Amendment retaliation case involving post-hoc punishment for disfavored speech, not a prior restraint which seeks to limit expressive activity before it occurs" is dicta because this reasoning was not essential to the *Wernsing* court's decision. *See Tate v. Showboat Marina Casino P'ship,* 431 F.3d 580, 582 (7th Cir. 2005). As such, Plaintiffs' attempt to use this language to establish an intimidation/anticipatory claim is without merit.

Finally, the language in *Fairley v. Fermaint,* 482 F.3d 897 (7th Cir. 2007), supports the Court's conclusion that there is no legal basis for a intimidation/chilling claim where protected speech need not precede a defendant's actionable conduct. As the Seventh Circuit explained:

> Plaintiffs maintain, however, that defendants **reacted adversely** to two kinds of speech: not only statements made as part of their duties at work (the kind of speech to which *Garcetti* applies) but also to testimony that plaintiffs gave in inmates' suits. Assistance to prisoners and their lawyers in litigation is not part of a guard's official duties. To apply *Garcetti,* therefore, we would need to determine **whether defendants reacted to plaintiffs' activities in litigation** (they say not) and which of defendants' deeds can be traced to the litigation as opposed to events at work.

*Id.* at 902 (emphasis added). In short, the Seventh Circuit instructs that the relevant issue here is how Defendants reacted to Plaintiffs' protected speech – not how Defendants acted before Plaintiffs' protected speech.

Based on *Wernsing*, established First Amendment retaliation precedent, and the lack of authority supporting Plaintiffs' derivative intimidation claim, the Court denies Plaintiffs' motion for reconsideration because the Court did not commit a manifest error of law in its in limine ruling. *See Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (manifest error of law is wholesale disregard, misapplication, or failure to recognize controlling precedent).

## II. Motion to Stay & Certify Appeal

In the alternative, Plaintiffs request that the Court stay the trial scheduled to begin on October 9, 2007, and certify for appeal the question of "whether Section 1983 permits a cause of action for harassment and intimidation in anticipation of and to discourage future speech protected by the First Amendment." (R.984-1, Pls.' Mot. Recons., at 9.)

Section 1292(b) provides that an interlocutory appeal may be taken if the underlying order "involves a controlling question of law as to which there is substantial ground for

difference of opinion" and if "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Certification by the district court is a jurisdictional prerequisite to interlocutory review under § 1292(b)." *In re Ford Motor Co., Bridgestone/Firestone North American Tire, LLC,* 344 F.3d 648, 653 (7th Cir. 2003) ("both the district court and the court of appeals must agree that the case is a proper candidate for immediate review before the normal rule requiring a final judgment will be overridden."). "Interlocutory appeal is appropriate when (1) the appeal presents a question of law; (2) it is controlling; (3) it is contestable; (4) its resolution will expedite the resolution of the litigation, and (5) the petition to appeal is filed in the district court within a reasonable amount of time after entry of the order sought to be appealed." *Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief,* 291 F.3d 1000, 1007 (7th Cir. 2002) (citing *Ahrenholz v. Board of Trs. of Univ. of Ill.*, 219 F.3d 674, 675-76 (7th Cir. 2000)). "Unless **all** these criteria are satisfied, the district court may not and should not certify its order to us for an immediate appeal under section 1292(b)." *Ahrenholz,* 219 F.3d at 676 (emphasis in original).

Here, there is no dispute that Plaintiffs' question that they seek to certify is a controlling question of law. *See Ahrenholz*, 219 F.3d at 676 (question of law "has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine"). In fact, Defendants offer their own questions for certification.[5] Defendants, however, contend that

---

[5] Because Defendants have not filed a separate motion under Section 1292(b), the Court need not consider their questions for interlocutory appeal, especially in light of their bare-boned arguments in support of these questions. *Kochert v. Adagen Medical Int'l Inc,.* 491 F.3d 674, 679 (7th Cir. 2007) ("undeveloped arguments are waived"). Moreover, Defendants' second query involves a question of fact, and thus is not appropriate for interlocutory appeal under Section 1292(b). *See Ahrenholz,* 219 F.3d at 677 (appropriate question for interlocutory appeal is "something the court of appeals could decide quickly and cleanly without having to study the

17

the *Wernsing* decision already resolved the relevant legal issue in this matter, thereby casting doubt on whether this legal issue is contestable as required under Section 1292(b).

"A question of law is contestable if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Calvin v. Sheriff of Will County,* No. 03 C 3086, 2006 WL 1005141, at *4 (N.D. Ill. Apr. 14, 2006); *see also Mannix v. Machnik,* No. 05 C 7232, 2006 WL 566447, at *3 (N.D. Ill. March 3, 2006) ("contested question of law," is defined as one creating a "substantial ground for difference of opinion.") (citing 28 U.S.C. § 1292(b)). As discussed in detail above, Plaintiffs have failed to present any case law – controlling or otherwise – that a public employee's protected speech under the First Amendment need not precede Defendants' intimidating and retaliatory conduct, regardless of how the cause of action is labeled. Thus, there are no conflicting decisions regarding the controlling issue of law. Plaintiffs' reliance on the Fourth Circuit cases for a derivative retaliation claim – alone – does not make their question contestable, especially because controlling authority, *Wernsing v. Thompson,* 423 F.3d 732 (7th Cir. 2005), holds that for First Amendment retaliation purposes, speech which has yet to occur is no speech at all. *Id.* at 752. In other words, Plaintiffs have not established that there is a "substantial ground for difference of opinion" concerning the existence of a First Amendment chilling/intimidation claim that does not require a plaintiff's protected speech to precede a defendant's actionable conduct. Finally, under the circumstances, the Court cannot conclude that its decision likely will be reversed on appeal.

---

record").

Because Plaintiffs have failed to satisfy the statutory requirement that the controlling legal issue is contestable, the Court need not address the other criteria under Section 1292(b). *See Ahrenholz,* 219 F.3d at 676. Accordingly, the Court denies Plaintiffs' motion to certify a legal question for interlocutory appeal.

### III. Defendants' Motion for Reconsideration

In the alternative, Defendants request that the Court reconsider its April 16, 2007 order denying Defendants' Second Motion for Summary Judgment and its reconsideration order of May 7, 2007, based on Plaintiffs' concession that they did not engage in protected speech prior to the alleged acts of retaliation. Defendants, however, do not point to any transcript or part of the record where Plaintiffs allegedly made this concession. Without more, the Court declines to revisit its earlier rulings as Defendants request.

**CONCLUSION**

For these reasons, the Court denies Plaintiffs' Motion for Reconsideration and Motion to Stay and Certify a Question of Law for Interlocutory Appeal.

**Dated:** September 24, 2007

                                    **ENTERED**

                                    _____
                                    **AMY J. ST. EVE**
                                    **United States District Judge**