IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER FAIRLEY and RICHARD GACKOWSKI, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SUPT. DENNIS ANDREWS, LT. EDWARD BYRNE, SGT. PATRICK LOIZON, OFC. EVAN FERMAINT OFC. NOBERTO BERCASIO, OFC. FRED COFFEY, OFC. RONALD PROHASKA, GREGORY ERNST, SAUL WEINSTEIN, TIMOTHY KAUFMANN, OFC. GABRIEL OCHOA, JUAN DIAZ, in their individual and official capacities, SHERIFF MICHAEL SHEAHAN, in his official capacity, and COOK COUNTY,[1] | ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 03 C 5207 |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court are Defendants' three separate bills of costs pursuant to Federal Rule of Civil Procedure 54(d)(1). (R. 1031-1, 1033-1, 1034-1). The Court presumes familiarity with its previous orders in this lawsuit, as well as Judge Castillo's orders while he was presiding judge over this matter. Because several issues presented by Plaintiffs and Defendants overlap, the Court first addresses the bills of costs in general. Thereafter, the Court will determine whether the costs Defendants seek in each of their bill of costs are recoverable and reasonable.

---

[1] On May 4, 2006, the Court granted Defendants Diaz's, Loizon's and Ernst's Motions for Summary Judgment in their entirety and dismissed these Defendants from this lawsuit. (R. 686-1.)

**LEGAL STANDARDS**

Rule 54(d)(1) provides that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." *See* Fed.R.Civ.P. 54(d)(1). "[A] district court may not tax costs under Rule 54(d) unless a federal statute authorizes an award of those costs." *Republic Tobacco Co. v. North Atl. Trading Co., Inc.,* 481 F.3d 442, 447 (7th Cir. 2007). The list of recoverable costs pursuant to 28 U.S.C. § 1920, includes (1) fees of the clerk and marshal, (2) fees for transcripts, (3) witness fees and expenses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation for court-appointed experts and interpreters. *See id.* Rule 54(d)(1) "provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago,* 469 F.3d 631, 634 (7th Cir. 2006). The Seventh Circuit recognizes "only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent." *Mother & Father v. Cassidy,* 338 F.3d 704, 708 (7th Cir. 2003); *see also Rivera,* 469 F.3d at 634-35. Taxing costs against the non-prevailing party requires two inquiries: (1) whether the cost is recoverable; and (2) whether the amount assessed is reasonable. *See Majeske v. City of Chicago,* 218 F.3d 816, 824 (7th Cir. 2000).

**ANALYSIS**

I. **Plaintiffs' Arguments Applying to All Defendants**

   A. **Defense Counsels' Conduct**

First, Plaintiffs contend that the Court should deny costs under Rule 54(d)(1) based on defense counsels' misconduct. *See Mother & Father,* 338 F.3d at 708. As the Seventh Circuit

2

instructs "only misconduct by the prevailing party worthy of a penalty (for example, calling unnecessary witnesses, raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings), or the losing party's inability to pay will suffice to justify denying costs." *Congregation of the Passion v. Touche, Ross, & Co.,* 854 F.2d 219, 222 (7th Cir. 1988); *see also Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997) (same); *Overbeek v. Heimbecker,* 101 F.3d 1225, 1228 (7th Cir. 1996) ("Rule 54(d)(1) gives a district court discretion to deny costs when exceptional circumstances are present."). In *Overbeek,* the Seventh Circuit concluded that the district court did not abuse its discretion in denying costs because the prevailing party's counsel caused a decade of protracted and needless litigation, which included counsel's conduct in: (1) refusing multiple settlement offers of the insurance policy limit; (2) needlessly pursuing a trial; (3) appealing the jury's decision not to award punitive damages even though defendants were judgment-proof; (4) vanishing for large periods of time; and (5) making frivolous arguments. *Id.*

Plaintiffs argue that although this Court presided over the less contentious stage of the proceedings than Judge Castillo, defense counsels' misconduct warrants a penalty. To recap, this lawsuit was filed on July 25, 2003, and was pending before Judge Castillo for over two and a half years before Judge Castillo granted Defendants' Motions for Recusal on March 16, 2006. (R. 659-1.) The next day, the Executive Committee reassigned the matter to this Court. (R. 666-1.) Thereafter, this Court presided over the remainder of this lawsuit and entered judgment in Defendants' favor on September 25, 2007. As such, this lawsuit lasted exactly 50 months – approximately 32 months before Judge Castillo and 18 months before this Court. In other words, Judge Castillo presided over 64% of this case and the Court presided over the remaining 36%.

In support of their argument that defense counsel engaged in misconduct worthy of a penalty, Plaintiffs point to incidents that occurred during the 32 month period when Judge Castillo was the presiding judge. Specifically, Plaintiffs contend that defense counsel: (1) consistently refused to comply with their discovery obligations; (2) engaged in unfocused and ill-advised discovery; (3) displayed a lack of candor to the Court and Plaintiffs; (4) allowed their clients to engage in obstructive behavior; and (5) consistently refused to engage in good faith settlement discussions. Plaintiffs support their allegations with facts in the record and Judge Castillo's findings in his order granting Defendants' motion for recusal. Prior to March 16, 2006, for example, Judge Castillo presided over 146 contested motions – mostly concerning discovery disputes – the vast majority of which were resolved in Plaintiffs' favor. Plaintiffs' allegations are also supported by Judge Castillo's recusal order, including his findings that: (1) Defendants repeatedly refused to comply with discovery obligations and engaged in a pattern of discovery delay; (2) Defendants' discovery requests were ill-timed and unfocused causing increased costs in the case; (3) defense counsels' conduct lacked candor in serving a final interrogatory involving 80 witnesses; (4) Defendant Sheahan engaged in obstructive behavior at his deposition; and (5) defense counsel displayed an "obstinate refusal to consider settlement." *Fairley v. Andrews,* 423 F.Supp.2d 800, 807-11, 814, 821-23 (N.D. Ill. 2006). In granting Defendant's recusal motion, Judge Castillo concluded:

> As documented repeatedly in this opinion, Defendants' attorneys engaged in repeated obstreperous pretrial conduct. Defendants were themselves sanctioned for failure to comply with this Court's discovery orders on multiple occasions. While attorneys should be vigorous advocates for their clients – within the bounds of appropriate civil behavior – they are also supposed to act as counselors and give reasoned and principled legal advice to their clients. During the 965 days this Court has presided over this lawsuit, this Court has seen scant evidence that the attorneys for the moving Defendants understand these important principles.

4

*Id.* at 822.

Defense counsels' misconduct before Judge Castillo parallels that of the prevailing party's counsel in the Seventh Circuit's *Overbeek* decision. Specifically, as found by Judge Castillo, the prevailing party's counsel caused protracted and needless litigation, refused to consider settlement, and engaged in obstructive behavior. *See Overbeek,* 101 F.3d at 1228; *see also Congregation of the Passion.,* 854 F.2d at 222. Under these circumstances, the Court, in its discretion, concludes that exceptional circumstances are present warranting a deduction for defense counsels' misconduct during the first 32 months of this lawsuit before Judge Castillo. *See Overbeek,* 101 F.3d at 1228.

After March 2006, this Court presided over this lawsuit. Plaintiffs admit that the second stage of this lawsuit, namely, the 18 months in front of this Court, was the less contentious stage of the proceedings. As far as defense counsels' conduct after March 2006, Plaintiffs point to counsels' numerous motions for reconsideration and Defendants' "confusing and contentious" motions in limine. As much as district courts caution litigants about the appropriate scope of motions for reconsideration, the Court cannot conclude that Defendants' motions for reconsideration filed before this Court rise to the level of conduct that warrants a penalty as illustrated in the *Overbeek* decision. In addition, although Defendants' various motions in limine overlapped, this overlap does not amount to misconduct warranting a penalty.

Accordingly, the Court will deduct 64% of the costs – after determining whether the costs Defendants seek are recoverable and reasonable – which represents the 32 months this case was before Judge Castillo based on defense counsels' conduct prior to March 17, 2006. The Court, however, will not penalize defense counsel for their conduct during the second stage of

this lawsuit because defense counsels' conduct did not warrant it.

### B. Fairley's Indigence

Next, Plaintiffs argue that because Fairley is indigent, he should be spared the imposition of costs in this matter. When costs are awarded under Rule 54(d) against more than one non-prevailing party, "the presumptive rule is joint and several liability unless it is clear that one or more of losing parties is responsible for a disproportionate share of the costs." *Anderson v. Griffin,* 397 F.3d 515, 522-23 (7th Cir. 2005).

The first step in addressing Fairley's argument is determining whether he is "incapable of paying court-imposed costs at this time or in the future." *Rivera,* 469 F.3d at 635 (citation omitted). Fairley has the burden of providing sufficient documentation to support such a finding. *Id.* "This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses." *Id.* As the *Rivera* court further explained:

> Requiring a non-prevailing party to provide information about both income/assets and expenses will ensure that district courts have clear proof of the non-prevailing party's dire financial circumstances. Moreover, it will limit any incentive for litigants of modest means to portray themselves as indigent.

*Id.*

Fairley has provided the Court with an affidavit detailing his wife's income, his debt, and a schedule of his expenses. Fairley is unemployed and does not aver that he has assets. Assuming Fairley's averments that his family of four has $3,635 worth of monthly expenses and his wife brings home approximately $2,200 a month in income are correct, the Fairley household income is above the Department of Health & Human Services 2008 Poverty Guidelines. *See* http://aspe.hhs.gov/poverty/08poverty.shtml. Moreover, even though the Fairley household's

6

expenses are more than their present income, Fairley has not provided sufficient documentation that he cannot pay the costs of this lawsuit in the future once he is employed. *See Rivera,* 469 F.3d at 635. As such, the Court concludes that Fairley is not indigent for the purpose of paying costs in this matter.

   **C.    Expert Fees**

   In their bill of costs, Defendants Dart, Kaufman, and Weinstein seek $8,567.94 in expert witness fees and Defendant Byrne seeks $3,356.30 in expert witness fees relying on Federal Rule of Civil Procedure 26(b)(4)(C)(i). Under Rule 54(d), district courts cannot award costs unless a federal statute authorizes the award of any such costs. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441-43, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *Republic Tobacco Co.,* 481 F.3d at 447. In *Crawford*, the Supreme Court specifically held that "a federal court may tax expert witness fees in excess of the [$40]-per-day limit set out in § 1821(b) only when the witness is court appointed." *Crawford,* 482 U.S. at 442. Here, it is undisputed that Defendants' expert witnesses were not court appointed.

   Defendants, however, rely on Rule 26(b)(4)(C)(i) as "explicit statutory authority" that allows expert fees under the circumstances. *See Crawford,* 482 U.S. at 439 ("when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or ***explicit statutory authority*** to the contrary") (emphasis added). Indeed, the Seventh Circuit has concluded that expert witness fees pursuant Rule 26(b)(4)(C) are recoverable as costs under Rule 54(d). *See Chambers v. Ingram,* 858 F.2d 351, 360-61 (7th Cir. 1988).

   Rule 26(b)(4)(C) provides that "[u]nless manifest injustice would result, (i) the court shall

require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery." In determining whether expert fees are appropriate under Rule 26(b)(4)(C)(i), courts consider whether the fees are reasonable and whether the entire cost should be borne by the opposing party. *See Chambers,* 858 F.2d at 360. In other words, "Rule 26(b)(4)(C) gives the court the discretion to order the seeking party pay the responding party a fair portion of the fees and expenses incurred in obtaining information from the expert." *Rhee v. Witco Chem. Corp.,* 126 F.R.D. 45, 48 (N.D. Ill. 1989). In addition, Rule 26(b)(4)(C) was designed to "meet the objection that it is unfair to permit one side to obtain without cost the benefit of an expert's work for which the other side had paid, often a substantial sum." *Id.*

Key to the Court's inquiry is determining the amount of time the expert witnesses spent in responding to discovery. *See* Fed.R.Civ.P. 26(b)(4)(C)(i). Courts in this district have concluded that costs associated with the time spent preparing for a deposition are recoverable, as well as the time attending the deposition. *See Waters v. City of Chicago,* 526 F.Supp.2d 899, 900-01 (N.D. Ill. 2007); *Profile Prod. v. Soil Mgmt. Tech., Inc.,* 155 F.Supp.2d 880, 886 (N.D.Ill. 2001); *but see Rhee,* 126 F.R.D. at 47-48. Under Section 1821(c)(1), reasonable witness travel costs are also recoverable. *See* 28 U.S.C. § 1821(c)(1).

Here, Defendants Dart, Kaufman, and Weinstein seek $8,567.94 in expert witness fees and travel expenses for the deposition testimony of Norman Carlson. Plaintiffs point to the Court's ruling on Plaintiffs' motion in limine to bar Carlson's expert testimony in support of their argument that the Court should deny Defendants' requests for Carlson's fees. (R. 880-1.) In that order, the Court granted in part and denied in part Plaintiffs' motion. Although the Court struck two parts of Carlson's opinion based on *Daubert* and Rule 702, there is nothing in the order

indicating that a manifest injustice would result by requiring Plaintiffs to pay these fees. Thus, the Court awards Defendants $8,567.94 in expert witness fees. The Court will deduct the 64% penalty later in this opinion.

Defendant Byrne seeks $3,356.30 in expert witness fees for James Boyd's preparation for his deposition, his actual deposition, as well as time and travel expenses in connection with his deposition. Defendant Byrne also seeks the costs incurred for economist Gary Skoog's deposition preparation. Plaintiffs argue that because the Court ordered both experts to file supplemental expert reports, Plaintiffs should not have to pay the expert fees Defendant Byrne seeks. (R. 856-1, 862-1.) The Court, however, did not order supplemental reports, but instead directed Defendant Byrne to submit an amended report or another evidentiary basis for part of Boyd's findings and a redacted version of Skoog's report. Thus, Plaintiffs' argument that "the extensive briefing required by plaintiffs in order to simply assure that defendants' expert comply with the rules" is misplaced. The Court awards Defendant Byrne $3,356.30 in expert fees under Rule 26(b)(4)(C)(i) prior to the 64% deduction.

The Court now turns to the Defendants' separate bills of costs to determine whether the costs they seek are recoverable and reasonable.

II.     **Bill of Costs – Defendants Andrews, Fermaint, Bercasio, Coffey, and Prohaska**

    A.     **Court Reporting and Transcription Fees – Section 1920(2)**

Defendants Andrews, Fermaint, Bercasio, Coffey, and Prohaska seek $3,774.45 in court reporting and transcription fees pursuant to 28 U.S.C. § 1920(2). The Court awards deposition charges if the deposition appears reasonably necessary in light of the facts known at the time of the deposition. *See Little v. Mitsubishi Motors N. Am., Inc.,* 514 F.3d 699, 702 (7th Cir. 2008);

*Mother & Father,* 338 F.3d at 712.  Under Northern District of Illinois Local Rule 54.1(b), the costs of a transcript shall not exceed the regular copy rate established by the Judicial Conference of the United States.  *See* N.D.Ill.L.R. 54.1(b).  The applicable rate pursuant to the Judicial Conference for depositions and trials conducted after February 28, 2003, but before November 1, 2007, is $3.30 per page for ordinary transcripts, $4.40 per page for expedited transcripts, and $5.50 for daily transcripts.  *See Gyrion v. City of Chicago,* 454 F.Supp.2d 725, 726 (N.D. Ill. 2006); *Askew v. City of Chicago,* No. 04 C 3863, 2006 WL 1005167, at *1 (N.D. Ill. Apr. 12, 2006).

Here, Defendants attach only four invoices for the eight depositions to which they refer in their bill of costs.  The per page costs are well within the Judicial Conference's parameters for the Andrews and Park depositions.  The Court, however, deducts $26.00 for the certified questions and $15.00 for the ASCII diskette from Gaskowski's August 17, 2005, deposition because these costs are supplementary and are in addition to the stenographic deposition transcript.  *See Mother & Father,* 338 F.3d at 712 (Section 1920(2) "only applies to court reporter fees and photocopies of deposition transcripts").  On the other hand, the Court does not deduct the $100 for appearance fee from Gackowski's deposition because attendance or appearance fees are recoverable under Section 1920(2).  *See id.*; *see also Held v. Held,* 137 F.3d 998, 1002 (7th Cir. 1998).  Thus, the Court awards costs for the Andrews ($618.80), Park ($382.20), and Gackowski ($493.25) depositions for a total of $1,494.25 – before the 64% deduction.  The Court will not award costs for the Prohaska deposition because Defendant Byrne requested costs for the same deposition, as discussed below.

  **B.**  **Fees for Exemplification and Copies – Section 1920(4)**

Next, Defendants Andrews, Fermaint, Coffey, Bercasio, and Prohaska request $2,784.37 in photocopying costs pursuant to Section 1920(4), which allows a judge to tax as costs "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." Courts interpret this section to mean that photocopying charges for discovery and court copies are recoverable, but charges for copies made for attorney convenience are not. *See Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir. 2000); *McIlveen v. Stone Container Corp.,* 910 F.2d 1581, 1584 (7th Cir. 1990). Under Section 1920(4), the prevailing party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble,* 924 F.2d 633, 643 (7th Cir. 1991). Instead, the prevailing party need only provide the best breakdown obtainable from the records. *See id.*

Here, Defendants give the Court a cryptic breakdown of the photocopying costs, but do not attach any invoices or cogent explanation concerning the costs they seek. Without more, Defendants have failed to provide sufficient descriptive information for a determination as to whether these costs are necessary and reasonable. *See Majeske,* 218 F.3d at 824. As such, the Court denies Defendants' request under Section 1920(4). *See Harkins v. Riverboat Serv., Inc.,* 286 F.Supp.2d 976, 980 (N.D. Ill. 2003) ("When the costs can not be obtained reasonably by reference to supporting documentation, the costs as requested cannot be awarded."). Therefore, the Court does not award Defendants costs for these photocopying charges.

Accordingly, before the 64% deduction, the amount of costs due Defendants Andrews, Fermaint, Bercasio, Coffey and Prohaska is $1,494.25 for the Andrews, Parks, and Gackowski deposition transcripts. The Court thus awards $537.93 to these Defendants reflecting the 64%

11

deduction based on defense counsels' misconduct.

**III.     Bill of Costs – Defendant Byrne**

   **A.     Court Reporting and Transcription Fees – Section 1920(2)**

Defendant Byrne seeks $5,310.30 in court reporting and transcription fees pursuant to 28 U.S.C. § 1920(2). The Court may award deposition charges if the deposition appears reasonably necessary in light of the facts known at the time of the deposition. *See Mother & Father,* 338 F.3d at 712. The applicable rate pursuant to the Judicial Conference for depositions and trials conducted after February 28, 2003, but before November 1, 2007, is $3.30 per page for ordinary transcripts, $4.40 per page for expedited transcripts, and $5.50 for daily transcripts.

First, Defendant Byrne seeks costs associated with his depositions, as well as the depositions of Defendants Fermaint, Bercasio, and Prohaska. Defendant Byrne attaches the invoice of his November 2, 2004, deposition transcript that was 248 pages long at $2.80 a page, which is well within the Judicial Conference's applicable rate. Thus, the Court awards Defendant Byrne $694.40 in costs for his first deposition. The invoice for Defendant Byrne's second deposition was billed at $2.60 per page, which is also within the applicable rate. The Court thus awards $374.40 for Byrne's second deposition.

Moreover, Defendant Byrne attaches the invoices for the deposition transcripts of Defendants Fermaint and Bercasio, which were billed at $2.60 per page and are within the applicable rate. Therefore, the Court awards $767.00 and $751.40 respectively for these deposition transcripts. The invoice for Defendant Prohaska's deposition transcript exceeded the $3.30 per page maximum by charging $3.78 per page, and thus the Court awards $432.30 for the Prohaska deposition transcript at the rate of $3.30 per page.

Defendant Byrne also seeks to recover the costs associated with the depositions of Linke, Boyd, Goldman, McTague, Patel, Guo, and Crawford because Plaintiffs identified these individuals as persons with knowledge of the allegations in the Complaint or disclosed these individuals as expert witnesses. Plaintiffs object to the deposition costs for Crawford because defense counsel had already deposed Crawford on the same topics in the *Fields* litigation. The Court agrees that Plaintiffs should not bear the costs for this unnecessary, duplicate deposition, and thus will not award Defendant Byrne fees for Crawford's deposition in the amount of $123.55.

The Court now turns to the experts' deposition transcripts. Defendant Byrne deposed Charles Linke, Plaintiffs' economist, on a daily basis, and Plaintiffs do not object to the daily basis rate. The per page rate for a daily deposition is $5.50, therefore the Court awards $533.50 for Linke's transcript, along with the $105.00 attendance fee, for a total of $638.50. Byrne also seeks costs associated with the deposition of James Boyd, his vocational rehabilitation expert. The costs per page for Boyd's deposition, including the exhibits, is well within the Judicial Conference rate. Therefore, the Court awards $289.10 for Boyd's deposition.

Defendant Byrne also seeks the deposition costs for Drs. McTague, Patel, and Guo, which are recoverable and reasonable. *See Majeske*, 218 F.3d at 824. Therefore, the Court awards costs associated with McTigue's deposition in the amount of $490.50, and a total of $376.25 for the Patel and Guo depositions which were taken at the same time. Finally, it is not entirely clear who Michael Goldman is and why Defendant Byrne took his deposition. Without more, the Court cannot determine whether this deposition appears reasonably necessary in light of the facts known at the time of the deposition. *See Mother & Father,* 338 F.3d at 712. In other words, the Court

cannot determine if the costs associated with this deposition are recoverable.  *See Majeske,* 218 F.3d at 824.  Therefore, Defendant Byrne is not awarded $372.90 in costs associated with the Goldman deposition.

In sum, the Court awards Defendant Byrne $4,813.85, for costs associated with depositions under Section 1920(2) before the 64% penalty based on defense counsels' misconduct in the first stage of these proceedings.

**B.  Fees for Witnesses – 28 U.S.C. § 1920(3)**

Next, Defendant Byrne seeks $120 in witness fees for Drs. Patel, Guo, and McTague for the time they spent during their depositions.  The costs recoverable for witness fees under Section 1920(3), include a witness' attendance at court or depositions, which is $40 per day.  *See* 28 U.S.C. § 1821(a), (b); *Crawford Fitting Co.,* 482 U.S. at 441-42.  Plaintiffs do not object to this amount, which is recoverable and reasonable.  *See Majeske,* 218 F.3d at 824.  Thus, the Court awards Defendant Byrne $120 in witness fees under Section 1920(3) before the 64% deduction.

**C.  Fees for Exemplification and Copies – Section 1920(4)**

Defendant Byrne also requests $108.40 in photocopying costs pursuant to Section 1920(4), which allows a judge to tax as costs "[f]ees for exemplification and copies of papers necessarily obtained for use in the case."  As discussed, photocopying charges for discovery and court copies are recoverable, but charges for copies made for attorney convenience are not.  *See Kulumani,* 224 F.3d at 685.  Although Defendant Byrne was "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," *see Northbrook Excess,* 924 F.2d at 643, some sort of explanation is necessary for the Court to determine if these costs are recoverable and reasonable.  *See Majeske,*

218 F.3d at 824.

Here, Defendant Byrne sets forth his attorney's declaration averring "I determined that Hinshaw filed 1,084 pages of documents on behalf of Defendant Byrne." (R. 1034-1, Bill of Costs, Ex. E.) These copies reflect courtesy copies submitted to the Court. Moreover, Defendant Byrne seeks $.10 per page, which is well within the range of reasonable rates. *See Harkins v. Riverboat Serv., Inc.,* 286 F.Supp.2d 976, 982 (N.D. Ill. 2003). Accordingly, the costs under Section 1920(4) totaling $108.40 are reasonable and recoverable.

In short, before the 64% deduction, Defendant Byrne's costs total $8,398.55. This amount includes the expert fees in the amount of $3,356.30 pursuant to Rule 26(b)(4)(C)(i), as discussed above. Deducting 64% from that amount, the Court awards Defendant Byrne a total of $3,023.48 in costs pursuant to Rule 54(d)(1).

**IV.     Bill of Costs – Defendants Dart, Kaufman, and Weinstein**

In their bill of costs, Defendants Dart, Kaufman, and Weinstein seek a total of $71,326.25, including costs associated with depositions transcripts, witness fees, and photocopying costs. The Court begins its analysis with Defendants' request for $15,734.51 in costs associated with photocopies under Section 1920(4).

**A.     Fees for Exemplification and Copies – Section 1920(4)**

Defendants request a total of $15,734.51 in photocopying costs pursuant to Section 1920(4), which allows a judge to tax as costs "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). As discussed, photocopying charges for discovery and court copies are recoverable, but charges for copies made for attorney convenience are not. *See Kulumani,* 224 F.3d at 685. Although Defendants are "not required to

15

submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," *see Northbrook Excess,* 924 F.2d at 643, they must provide an explanation or some details for the Court to determine if these costs are recoverable and reasonable. *See Majeske,* 218 F.3d at 824.

First, Defendants set forth an attorney declaration averring "I determined that Bell Boyd filed 9,060 pages of documents on behalf of Defendants." (R. 1025-6, Bill of Costs, Ex. D.) These documents represent courtesy copies of the pleadings and exhibits that Defendants filed. Defendants seek $.10 per page, which is reasonable, and thus the Court awards $906.00 for these photocopies under Section 1920(4).

Next, Defendants seek $6,696.50 in copies of documents produced in response to Plaintiffs' discovery requests. Defendants maintain that Plaintiffs sought and obtained at least 270,000 copies from Defendants in response to their discovery requests, yet they are only seeking costs for copies of 66,965 pages of documents. In support of their request, Defendants provide the Court with Exhibits F and G, which do not indicate the number of pages that were photocopied. It appears that Exhibits F and G provide dollar amounts, but only Exhibit G attempts to identify what documents were photocopied. Nevertheless, without more information, it is impossible to discern whether these costs are recoverable and reasonable. *See Majeske*, 214 F.3d at 824. Although Defendants were "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," they must provide the best possible breakdown from the records, which they have failed to do. *See Northbrook Excess & Surplus,* 924 F.2d at 643. Therefore, the Court does not award Defendants $6,696.50 for photocopying costs under Section 1920(4).

Defendants also seek $8,132.01 for the Bates labeling of 271,067 documents. Defendants contend that such labeling was reasonable necessary for the parties to manage their discovery. Although both parties may have benefitted from the Bates labeling, costs associated with the parties' convenience are not recoverable. *See Kulumani,* 224 F.3d at 685; *Cefalu v. Village of Elk Grove,* 211 F.3d 416, 429 (7th Cir. 2000). Moreover, "there is no provision in the statute for recovering the expense of organizing documents in a party's case in general or of Bates numbering in particular." *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, No. 01 C 4366, 2004 WL 1631676, at *5 (N.D. Ill. July 19, 2004). The Court will not award fees for Bates labeling as Defendants request.

Accordingly, the Court awards Defendants Dart, Kaufman, and Weinstein a total of $906.00 for photocopying costs under Section 1920(4) prior to the 64% penalty for defense counsels' misconduct during the first stage of this lawsuit.

**B.     Court Reporting and Transcription Fees – Section 1920(2)**

Next, Defendants Dart, Kaufman, and Weinstein seek $47,023.90 in court reporting and transcription fees for over 50 depositions pursuant to 28 U.S.C. § 1920(2). The Court may award deposition charges if the deposition appears reasonably necessary in light of the facts known at the time of the deposition. *See Mother & Father,* 338 F.3d at 712. The applicable rate pursuant to the Judicial Conference for depositions and trials conducted after February 28, 2003, but before November 1, 2007, is $3.30 per page for ordinary transcripts, $4.40 per page for expedited transcripts, and $5.50 for daily transcripts.

Plaintiffs object to costs associated with the deposition transcripts of Nancy Donahoe, Tom Dart, Michael Sheahan, Richard Remus, and Karen Lader's August 29, 2005, depositions

because they were not reasonably necessary in light of the facts known at the time of the deposition. Specifically, Plaintiffs contend that the circumstances surrounding the depositions of Lader, Donahoe, and Dart were suspicious because these individuals were deposed based on the Sheriff Office's inquiry after an unnecessary July 2005 report. The Court, however, denied Plaintiffs' motion in limine to exclude evidence of this report and the Sheriff Office's 2005 activities because whether these activities were suspicious was a question for the jury. (R. 936-1.) As such, Plaintiffs' arguments concerning these depositions are unavailing.

Moreover, Plaintiffs object to costs associated with Sheriff Michael Sheahan's deposition because of his obstructionist behavior during his deposition. Specifically, Judge Castillo concluded that Sheahan's obstructionist behavior included arriving late to his deposition, giving non-responsive answers, and refusing to sit for the allotted six hours. *See Fairley,* 423 F.Supp.2d at 810-11. Based on Sheahan's conduct, the Court will not award costs associated with his deposition in the amount of $462.36. On the other hand, Plaintiffs' argument that Richard Reamus' deposition was not reasonably necessary in light of the facts known at the time of the deposition is refuted by Plaintiffs identifying him as a person with knowledge and Plaintiffs' motion for leave to serve a subpoena for Reamus' deposition. (R. 177-1.)

Next, Plaintiffs assert that the expedited status of Tim Kaufman's deposition was not necessary for the preparation of Juan Frank Diaz's deposition because Diaz's deposition was originally scheduled after Kaufman's deposition. The Court agrees and reduces Kaufman's deposition costs by $113.30. Plaintiffs also argue that Defendants Dart, Kaufman, and Weinstein's counsel delayed the Henry Barsch deposition, and thus any increased costs based on the timing of the deposition should not be taxed to them. (R. 1036-2, Pl.'s Resp. Costs, Ex. I.)

18

Again, the Court agrees and subtracts $189.55 in costs associated with Barsch's deposition.

Plaintiffs also maintain that the costs associated with videotapes of certain depositions are not recoverable. Although the Seventh Circuit recently concluded that transcripts of video-recorded depositions fall within Section 1920(2), *see Little,* 514 F.3d at 702, Plaintiffs assert that they should not be taxed for ***both*** the stenographic transcript and the videotape because both were not "necessarily obtained for use in the case." In support of their argument, Plaintiffs rely on Defendants' statement that they should recover costs for the Fairley and Gackowski videotaped depositions "because the potential impact of these videotaped depositions on the jury would have eviscerated Plaintiffs at trial." (R. 1025-1, Dart, Kaufman, & Weinstein Bill of Costs, at 9.) Defendants' rationale does not support the conclusion that these videotaped depositions – in addition to the stenographic transcripts – were reasonably necessary in light of the facts known at the time of the deposition. *See Mother & Father,* 338 F.3d at 712. The Court will not award the costs associated with the videotaped depositions of Fairley and Gackowski for a total of $6,344.32. Defendants, however, explain that the videotape depositions of Jean Snyder, Richard Reamus, and Alfred Imgrund were necessary because these individuals are non-parties and there was a reasonable possibility that they would be unavailable for trial. The Court agrees and allows costs for these videotaped depositions.

Accordingly, the Court subtracts $7,109.53 from Defendants' Section 1920(2) request of $47,023.90 for a total of $39,914.37. Adding this amount to the $906.00 for photocopying expenses under Section 1920(4) and the $8,567.94 in expert fees pursuant to Rule 26(b)(4)(C)(i), the total amount of costs before the 64% penalty is $49,388.31. The Court thereby awards Defendants Dart, Kaufman, and Weinstein a total of $17,779.79 after the 64% penalty based on

defense counsels' misconduct.

## CONCLUSION

For the reasons stated above, the Court awards Defendants Andrews, Fermaint, Bercasio, Coffey, and Prohaska a total of $537.93 in costs pursuant to Rule 54(d)(1). The Court awards Defendant Byrne a total of $3,023.48 in costs. Also, the Court awards Defendants Dart, Kaufman, and Weinstein a total of $17,779.79 in costs. Plaintiffs are jointly and severally liable for these costs. *See Anderson v. Griffin,* 397 F.3d 515, 522-23 (7th Cir. 2005). Finally, the Court stays the enforcement of this order for costs pending the outcome of the appeal in this matter.

**Dated:** April 8, 2008

                              **ENTERED**


                              _____
                              **AMY J. ST. EVE**
                              **United States District Judge**