IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROGER FAIRLEY and RICHARD GACKOWSKI, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 03 C 5207 |
| DENNIS ANDREWS, EDWARD BYRNE, EVAN FERMAINT, NOBERTO BERCASIO, FRED COFFEY, and RONALD PROHASKA, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendants have moved pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to preclude the expert testimony of Steve Martin. For the following reasons, the Court grants Defendants' motion. The Court also grants Defendants' motion to exclude the Rule 1006 summaries of the sustained rates and discipline based on Martin's analysis of the IAD investigation files.

**LEGAL STANDARD**

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "The Federal Rules of Evidence define an 'expert' as a person who possesses 'specialized knowledge' due to his 'skill, experience, training, or education' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Banister v. Burton,* 636 F.3d 828, 831 (7th Cir. 2011) (quoting Fed.R.Evid. 702). Rule 702 also requires that: "(1) the

testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case." *Zamecnik v. Indian Prairie Sch. Dist. No. 204,* 636 F.3d 874, 881 (7th Cir. 2011) (quoting Fed.R.Evid. 702).

Under the expert-testimony framework, federal courts perform the gatekeeping function of determining prior to admission whether the expert testimony is both relevant and reliable. *See Banister,* 636 F.3d at 831; *see also United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). In particular, federal courts employ a three-part analysis in making this determination: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Illinois Central R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010). As the Seventh Circuit instructs, "[t]he focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (quoting *Daubert*, 509 U.S. at 595). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999)).

In *Daubert*, the Supreme Court offered the following non-exclusive factors to assist

courts in determining whether a particular expert opinion is grounded in a reliable scientific methodology: (1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has a known or potential rate of error; and (4) whether the relevant scientific community has accepted the theory. *See Happel* v. *Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010).

An expert may be qualified to render opinions based on experience alone. *See Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data"). "In certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony." Advisory Committee Notes to Rule 702. "[W]hile extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Trustees of Chicago Painters & Decorators Pension, Health & Welfare v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787-88 (7th Cir. 2007) (citations and quotations omitted). As such, courts "consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Id.* Finally, "[t]he proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis,* 561 F.3d at 705.

## BACKGROUND

On appeal, the Seventh Circuit narrowed Plaintiffs' First Amendment claims for trial concluding that Plaintiffs' claim based on *Monell v. Department of Social Servs.,* 436 U.S. 658,

3

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), namely, that the Defendants punished them for defying the code of silence by reporting fellow correctional officers' misconduct, was not protected speech in light of *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). *See Fairley v. Andrews,* 578 F.3d 518, 522-25 (7th Cir. 2009), and thus is no longer part of this lawsuit. The Seventh Circuit, however, concluded that *Garcetti* did not bar Plaintiffs' theory of liability that Defendants bullied, harassed, and threatened them to deter them from testifying in the *Fields* litigation, which concerned the use of excessive force against inmates at the Cook County Department of Corrections ("CCDOC"). *See id.* at 524-25. More specifically, the *Fairley* court concluded that the "first amendment protects speakers from threats of punishment that are designed to discourage future speech." *Id.* at 525. To prove their remaining First Amendment claim, Plaintiffs must establish that: (1) Defendants bullied, threatened, or harassed them; (2) Plaintiffs' potential testimony in the *Fields* litigation was the "but-for" cause of Defendants' assaults and threats; and (3) damages. *See id.* at 525-26.

## ANALYSIS

Plaintiffs properly designated Steve Martin as an expert in correctional facilities administration under Federal Rule of Civil Procedure 26(a)(2). In the present *Daubert* motion, Defendants argue that Steve Martin's expert reports and opinions are irrelevant to this lawsuit after the Seventh Circuit's opinion in *Fairley v. Andrews,* 578 F.3d 518 (7th Cir. 2009), because Martin's opinions pertain to Plaintiffs' *Monell* code of silence claim. Also, Defendants contend that Martin's expert reports and opinions do not have a sufficient basis as required by *Daubert* and Rule 702.

I.      **Steve Martin's Background and Opinions**

A.  **Background**

Martin has been in the field of criminal justice since 1972 and is a licenced attorney with a background in criminology and correctional administration. In particular, Martin received his *juris doctor* from University of Tulsa in 1981, his Master of Arts in Correctional Administration from Sam Houston State University in 1974, and his Bachelor of Science in Criminology and Corrections from Sam Houston State University in 1973. Prior to becoming a corrections consultant in 1987, Martin worked for the Texas Attorney General's Office as a consultant to the Chief of the Enforcement Division on litigation involving the Texas Department of Corrections. He also worked for the Texas Department of Corrections in several capacities, including legal counsel, general counsel, and as the Executive Assistant to the Director. Further, Martin was an Assistant District Attorney for Tulsa County, Oklahoma. Martin's other work experience includes working for the Federal Bureau of Prisons and the United States Probate and Parole Office.

Moreover, the United States Department of Justice, Civil Right Division, has retained Martin as an expert in the investigation and monitoring of prison and jail facilities. Martin has also been retained as an expert witness in numerous civil rights lawsuits pertaining to inmates and correctional facilities, more specifically, lawsuits involving the use of excessive force in prisons, inmate violence, conditions of confinement, and punitive segregation. In addition, Martin has authored and co-authored several articles and papers regarding prison conditions, prisoners' rights, prison reform, and use of force issues. Some of his articles include, "Prisoners' Rights," Texas Tech Law Review, Vol. 20, Symposium 1989, Number 2, and "Corrections in the New Millennium: The Mean Season," Texas Criminal Defense Lawyers Association, Vol. 29,

Number 2, March 2000.

Defendants do not challenge Martin's qualifications as an expert. Indeed, based on his extensive academic, practical expertise, and general experience in the area of prison litigation and correctional facilities administration, Martin qualifies an expert under *Daubert* and Rule 702 to testify about the CCDOC's administration in relation to the use of force against inmates. *See Gayton v. McCoy,* 593 F.3d 610, 616 (7th Cir. 2010) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.") (citation omitted).

### B. Martin's Opinions

In his expert report, Martin explains that he analyzed documents produced in this lawsuit, including orders, deposition transcripts, incident reports, detainee grievances, and investigative reports, including Internal Affairs Division ("IAD") investigations, regarding allegations of excessive and unnecessary use of force by employees at the CCDOC. Plaintiffs maintain that Martin's opinions about the CCDOC's policies involving the reporting, supervisory review, investigating, and discipline of excessive force incidents are still relevant to this lawsuit after the Seventh Circuit's decision in *Fairley v. Andrews,* 578 F.3d 518 (7th Cir. 2009). Plaintiffs specifically point to the following four opinions:

- A. The CCDOC did not have a use of force reporting system in place that ensures or requires its officers to accurately and fully report incidents of force, the effect of which is to conceal incidents in which there may be evidence of excessive or unnecessary force.

- B. The CCDOC did not have a supervisory review system in place that ensures or requires supervisors to conduct substantive reviews of incidents of force, the effect of which is to conceal incidents in which there may be

6

          evidence of excessive force or unnecessary force.

    C.      The CCDOC and the Cook County Sheriff's Office ("CCSO") routinely failed to properly investigate use of force incidents, the effect of which is to conceal incidents in which there is evidence of excessive or unnecessary force.

    D.      The CCDOC and CCSO routinely failed to impose meaningful disciplinary sanctions for violations of the Use of Force General Order No. 9.16, the effect of which is to conceal those incidents in which there is evidence of excessive or unnecessary force.

(R. 1240, Martin Expert Report, at 8-10.)

## II.    Relevancy

The Court turns to Defendants' relevancy argument because it is dispositive. Defendants argue Plaintiffs cannot establish that Martin's opinions and analyses concerning the CCDOC's deficiencies in reporting and investigating the use of excessive force relate to their remaining constitutional claim that Defendants bullied and threatened them in order to deter them from testifying in the *Fields* litigation. To clarify, "Rule 702 allows testimony by a qualified expert if such testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Gallardo,* 497 F.3d 727, 733 (7th Cir. 2007) (quoting Fed.R.Evid. 702). As the *Daubert* Court teaches, Rule 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance." *Id.* at 591. In other words, *"Daubert* instructs that expert testimony must be relevant and factually linked to the case in order to meet Rule 702's 'helpfulness' requirement." *Gallardo,* 497 F.3d at 733.

Here, any factual link Martin's expert testimony has to the remaining issues in this lawsuit is tenuous at best because the *Monell* code of silence claim is no longer part of this case.

This is not an excessive force claim. Although the *Fields* litigation involved the alleged use of excessive force and Plaintiffs' spoke out against such force, expert evidence about the CCDOC's reporting, supervisory review, investigations, and disciplining of excessive force is no longer relevant to this lawsuit. In other words, there has to be a connection between Martin's expert opinions and the remaining claim in this lawsuit for his opinions to fulfill the helpfulness standard under Rule 702 because "[e]xpert testimony which does not relate to an issue in the case is not relevant, and ergo, not helpful." *See Daubert,* 509 U.S. at 591 (citation omitted); *see also Porter v. Whitehall Labs., Inc.,* 9 F.3d 607, 613 (7th Cir. 1993). Thus, although the use of excessive force is the underlying issue in the *Fields* litigation, Martin's opinions about the reporting, supervising, investigating, and disciplining of excessive force at the CCDOC do not relate to Plaintiffs' remaining First Amendment claim that Defendants bullied, harassed, and threatened them to deter them from testifying in the *Fields* litigation.

Nonetheless, Plaintiffs argue that Martin's opinion testimony is relevant because it makes it more likely than not that Plaintiffs were harassed and that Plaintiffs' potential testimony was the motivation for the harassment. Even if this testimony were relevant as Plaintiffs contend, its negligible probative value is substantially outweighed by the danger of unfair prejudice and juror confusion. *See* Fed.R.Evid. 403; *United States v. Ozuna,* 561 F.3d 728, 738 (7th Cir. 2009). As the Seventh Circuit explains,"[e]vidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but also because its admission makes it likely that the jury will be induced to decide the case on an improper basis." *Thompson v. City of Chicago,* 472 F.3d 444, 456 (7th Cir. 2006). Whether the CCDOC and its correctional officers had problems in supervising, investigating, reporting, and disciplining in the context of excessive force against

CCDOC inmates and pre-trial detainees may not only confuse the jurors as to what claim is at issue in this lawsuit, but lead the jury to decide this case on an improper basis, namely, that Defendants are liable based on the CCDOC's administrative short comings. In addition, there is a danger that Martin's testimony would distract the jury from the central issue in this case. *See United States v. Alayeto,* 628 F.3d 917, 922 (7th Cir. 2010). As the Court has repeatedly stated, the upcoming trial in this matter is about Plaintiffs' remaining First Amendment claim – that Defendants bullied and threatened them to deter them from testifying in the *Fields* litigation – and not about Defendants punishing Plaintiffs for defying the alleged code of silence.

Because the Court is granting Defendants' motion to exclude the expert testimony of Steve Martin, the Court also grants Defendants' motion to exclude the Rule 1006 summaries of the sustained rates and discipline based on Martin's analysis of the IAD investigation files. Again, because the probative value of these summaries is substantially outweighed by unfair prejudice and juror confusion, the Court grants Defendants' motion to exclude these summaries. *See* Fed.R.Evid. 403; *see also Alayeto,* 628 F.3d at 922; *Thompson,* 472 F.3d at 456.

## CONCLUSION

For these reasons, the Court grants Defendants' Renewed Motion in Limine to Bar Plaintiffs' Expert Steve Martin. The Court also grants Defendants' motion to exclude the Rule 1006 summaries of the sustained rates and discipline based on Martin's analysis of the IAD investigation files.

**Dated:** May 31, 2011

                                        **ENTERED**

                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**