# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5207 | **DATE** | 6/3/2011 |
| **CASE TITLE** | Fairley vs. Andrews | | |

**DOCKET ENTRY TEXT**

The Court denies Plaintiffs' motion for reconsideration [1230] and grants Defendants' Rule 404(b) and *Monell* in limine motions in their entirety.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

      On May 3, 2011, the Court granted in part and denied in part Defendants' motion in limine to bar evidence pertaining to Plaintiffs' *Monell* claim. In the Court's May 3, 2011 minute order, the Court rejected Defendants' overly broad argument that evidence of all CCDOC incidences that did not involve the Plaintiffs or Defendants must be barred and directed Plaintiffs to identify specific incidents at the CCDOC that they seek to introduce at trial. Meanwhile, on May 16, 2011, the Court granted Defendants' motion in limine to bar evidence of alleged prior bad acts that occurred before the July 29, 2000 SI-2 incident under Federal Rule of Civil Procedure 404(b). Plaintiffs ask the Court to reconsider this ruling in light of the specific instances they have identified pursuant to the Court's May 3, 2011 order. Because these incidences overlap with the Court's Rule 404(b) and *Monell* in limine rulings, the Court addresses the motion for reconsideration and motions in limine together.

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

Because the Court did not commit a manifest error of fact or law, the Court denies Plaintiffs' motion for reconsideration. *See Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'") (citation omitted). Further, the Court grants Defendants' Rule 404(b) and *Monell* motions in their entirety.

## LEGAL STANDARD

The Court's earlier in limine rulings did not dispose of this case in its entirety, therefore, the Court reviews Plaintiffs' reconsideration motion under Federal Rule of Civil Procedure 54(b), which states in relevant part:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Thus, under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the Court enters a final judgment. *See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable"). Motions for reconsideration under Rule 54(b) serve the limited function of correcting manifest errors of law or fact. *See Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir. 1987); *Zurich Capital Mkt., Inc. v. Coglianese,* 383 F.Supp.2d 1041, 1045 (N.D. Ill. 2005).

## BACKGROUND

To recap, in granting Defendants' other bad acts motion in limine, the Court stated:

> "Rule 404(b) provides that evidence of other acts is inadmissible 'to prove the character of a person in order to show action in conformity therewith' but may be admissible for other purposes, such as proof of motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident." *United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011). When determining whether evidence is properly admitted under Rule 404(b), the Court considers the following factors: "(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, as required by Rule 403." *See id.*; *see also United States v. Courtright,* 632 F.3d 363, 369 (7th Cir. 2011).
>
> The Court turns to the fourth factor of this test in determining whether this evidence is admissible because it is dispositive. The probative value of evidence reflecting Defendants' alleged excessive force against inmates prior to the SI-2 incidents is attenuated at best, especially because the protected speech at issue involves Plaintiffs' potential testimony in the *Fields* litigation and not testimony as to any of these earlier acts that are unrelated to the SI-2 incident. Moreover, there is a real danger that the jury may improperly use this evidence, namely, that

because Defendants engaged in excessive force before, they used excessive force during the SI-2 incident. *See Courtright,* 632 F.3d at 370 ("a Rule 404(b) prejudice determination also evaluates whether the evidence will be improperly used by the jury as proof of propensity."). Also, evidence of this alleged misconduct would lead to juror confusion because the jury may focus on the merits of this unrelated conduct instead of the conduct related to the SI-2 incident. *See, e.g., United States v. Alayeto,* 628 F.3d 917, 922 (7th Cir. 2010) (juror confusion included danger that jury would be distracted from central issue in case).

(R. 1224, 5/16/11 Minute Order, at 2.)

Fairley and Gackowski's potential testimony about the actual SI-2 incident that occurred on July 29, 2000 and its aftermath is the protected speech in this First Amendment claim. Plaintiffs are now attempting to expand this protected speech case to include evidence that is not relevant. This is not an excessive force case. Plaintiffs nonetheless want to make this case about all excessive force events at the CCDOC – events that were not part of the *Fields* trial. Plaintiffs are attempting to admit other "excessive force" incidents – including those that the Seventh Circuit has specifically said are covered under *Garcetti* and thus not protected speech. Plaintiffs' attempts, especially on the eve of trial, to broaden this case fail, and the motion is denied.

Specifically, Plaintiffs seek to admit "ten specific incidents" that occurred prior to and following the July 29, 2000 SI-2 incident which is the center of this case. Plaintiffs now contend that the "testimony about the July SI-2 Incident was only a portion of what Defendants feared Plaintiffs would testify about in the *Fields* case." In defense of this position, Plaintiffs now attempt to claim that Defendants bullied and threatened them in order to deter them from testifying in *Fields* about all instances of Defendants' use of excessive force that Plaintiffs observed or were aware of, not just the SI-2 Incident. Plaintiffs have not pursued this theory during this litigation, and the Seventh Circuit specifically rejected that many of the incidents are protected speech. Plaintiffs' attempt to now cast these incidents as anticipated testimony in the *Fields* litigation is simply an effort to get around the limited nature of their remaining claims and the prior rulings of the Court and the Seventh Circuit. Furthermore, Plaintiffs do not contest that *none* of these incidents were admitted into evidence in the *Fields* trial.

Accordingly, testimony about what Defendants did during the SI-2 incident is not "other bad acts" evidence because this conduct is the actual act at issue and is highly probative. Moreover, this testimony gives context to Plaintiffs' First Amendment claim. Thus, outside of Byrne's inflammatory and reprehensible statements made during the SI-2 incident that did not withstand the Court's Rule 403 analysis, Fairley, who was an eyewitness to the incident, may testify to his own personal observations of the events that occurred during the July 29, 2000 SI-2 incident and thereafter. *See* Fed.R.Evid. 602. Although Gackowski was not an eyewitness to the actual SI-2 events on July 29, 2000 because he was assigned to a different division of the CCDOC that housed the Cermak Hospital Emergency Room, he did observe the aftermath of the SI-2 incident, including the inmates' injuries. He may also testify to his firsthand, eyewitness accounts of these events and observations. *See Payne v. Pauley,* 337 F.3d 767, 772 (7th Cir. 2003).

Meanwhile, per the Court's May 3, 2011 minute order, Plaintiffs have identified the specific instances of conduct that they wish to introduce at trial: (1) the Ortiz and Cruz incident in 1998; (2) Coffey's April 1, 2000 alleged beating of Rodney Brown; (3) Byrne's alleged beating of Alpacino Lewis; (4) incidents leading up to the SI-2 incident; (5) Gackowski's eyewitness accounts; and (6) Coffey's and Ochoa's alleged punching of Vennis McCall on June 7, 2002.

## I. The 1998 Ortiz/Cruz and 2000 Rodney Brown Incidents

First, Plaintiffs argue that evidence of the 1998 incident in which Defendant Coffey forearmed an inmate's

head into a steel plate wall after an inmate fight is relevant to this lawsuit. Fairley reported the incident after which Defendant Coffey called him a snitch and threatened to beat him. Fairley testified about this incident in his October 27, 2003 deposition in the *Fields* litigation. Similarly, Plaintiffs seek to introduce evidence that Gackowski witnessed Coffey beating Rodney Brown on April 1, 2000. Gackowski testified about the Brown incident in his 2003 *Fields* deposition. There is no evidence that any of this testimony was admitted during the *Fields* trial, and the *Fields* complaint does not contain any allegations regarding it.

Plaintiffs maintain that this evidence is the actual protected speech that Defendants attempted to restrain – their testimony in the *Fields* litigation. Just because Fairley and Gackowski testified about these incidents in their 2003 *Fields* depositions does not mean that their testimony is automatically admissible in the present lawsuit. *See United States v. Rogers,* 587 F.3d 816, 822 (7th Cir. 2009) ("Rule 403 [] gives a court discretion to exclude evidence that is problematic because it will be difficult to confine it to proper bounds."). Indeed, the Seventh Circuit specifically noted that Plaintiffs' internal complaints regarding behavior at the CCDOC are not protected speech, and thus actions that occurred before the altercation in the Special Incarceration Unit 2, such as the taunting that followed Gackowski's defense of inmate Brown, are not an appropriate source of damages. *See Fairley v. Andrews*, 578, 518, 526 (7th Cir. 2009). Plaintiffs cannot circumvent the holding in *Garcetti* that covers Gackowski's statements regarding the Brown incident by arguing that Gackowski testified about the incident during his *Fields* deposition. The Court has not barred, nor have Defendants moved, to exclude all testimony of Plaintiffs' protected speech, therefore, the jury will have plenty of information pertaining to the nature of Plaintiffs' protected speech.

Further, Plaintiffs have failed to establish that the 1998 and 2000 evidence is relevant to the matter at issue, especially because Coffey was not a defendant in *Fields*. *See Hicks*, 635 F.3d at 1069. In addition, testimony about the 1998 and 2000 incidents concerning Coffey's alleged use of excessive force does not clear the Rule 403 hurdle because the probative value this evidence is substantially outweighed by unfair prejudice that the jury will use this as propensity evidence. *See Thompson v. City of Chicago,* 472 F.3d 444, 456 (7th Cir. 2006) ("[e]vidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but also because its admission makes it likely that the jury will be induced to decide the case on an improper basis."). In other words, Plaintiffs' attempt to introduce this evidence appears to be an effort to dirty up Coffey with other bad acts evidence. *See Scott v. City of Chicago,* 724 F.Supp.2d 917, 927 (N.D. Ill. 2010); *see also Lewis v. City of Chicago Police Dept.,* 590 F.3d 427, 441 (7th Cir. 2009) ("district court is afforded a special degree of deference when deciding whether evidence is unfairly prejudicial under Rule 403").

Finally, testimony concerning the 1998 and 2000 incidents goes to Plaintiffs' theory of liability that the Seventh Circuit rejected, namely, that Defendants punished Plaintiffs for defying the code of silence because they reported fellow officers' misconduct. *See Fairley v. Andrews,* 578 F.3d 518, 522-25 (7th Cir. 2009). As such, Plaintiffs' reconsideration motion is denied as to the 1998 and 2000 incidents involving Defendant Coffey.

## II.     Alpacino Lewis Incident

In their motion for reconsideration, Plaintiffs further contend that Fairley's and Gackowski's eyewitness testimony that Byrne beat inmate Alpacino Lewis in the H-1 tier sometime in late summer or early fall 2001 is admissible as protected speech. More specifically, Plaintiffs maintain that after Fairley had handcuffed Lewis and put him in a "safety cage," Byrne entered the safety cage and beat Lewis while a group of correctional officers watched. Plaintiffs also assert that some of these correctional officers, including Defendant Prohaska, cheered Byrne on. Both Fairley and Gackowski testified to this incident in their *Fields* depositions, but there is no evidence that it was part of the *Fields* trial or the allegations in the *Fields* complaint.

This testimony is highly disputed with numerous eyewitness accounts contradicting Fairley and

Gackowski's testimony, including testimony from officers who are not Defendants in this lawsuit. Thus, admission of the Lewis incident would not only cause delay, but would distract the jurors from the central issue in this lawsuit, namely, whether Defendants harassed, assaulted, and threatened Plaintiffs to prevent them from testifying in the *Fields* litigation. *See Alayeto,* 628 F.3d at 922. Moreover, in his October 2003 deposition, Fairley testified that this incident happened sometime in early 2000, before the SI-2 incident, putting into question whether this act is similar and close enough in time to be relevant to this lawsuit. *See Hicks,* 635 F.3d at 1069. In sum, there will be no mini-trial shifting the focus from Plaintiffs' allegations that they were harassed and threatened in an attempt to deter them from testifying in the *Fields* litigation to a trial about the Alpacino Lewis incident. *See Manuel v. City of Chicago,* 335 F.3d 592, 597 (7th Cir. 2003); *BP Amoco Chem. Co. v. Flint Hills Res., LLC,* 697 F.Supp.2d 1001, 1038 (N.D. Ill. 2010). The Court denies Plaintiffs' reconsideration motion in this respect.

### III. Incidents Leading Up to the SI-2 Incident

Next, Plaintiffs maintain that two incidents leading up to the SI-2 incident involving Defendants Prohaska and Byrne are relevant because Plaintiffs testified about them in their *Fields* depositions. According to Plaintiffs, these incidents involved inmates who complained about or provided statements concerning earlier excessive force incidents involving Byrne and Prohaska after which these inmates were targeted in the July 29, 2000 SI-2 incident. Indeed, the *Fields* complaint alleges that the CCDOC inmates' complaints about the January 15, 2000 beating of Earl Faber and the May 2000 beating of George Fernandez led up to the July 29, 2000 events. Plaintiffs do not, however, present any evidence that evidence regarding these events was admitted in the *Fields* trial.

The Faber incident allegedly involved Defendant Prohaska and the Fernandez incident allegedly involved Defendant Byrne. Although Plaintiffs note in their motion that they "witnessed or had information about both of these incidents," the record is devoid of any first-hand knowledge by either Plaintiff of these beatings. Neither Plaintiff testified about the Faber event at his deposition in the *Fields* litigation. Significantly, Fairley specifically testified in his *Fields* January 2003 deposition that he did not witness the Fernandez event. Gackowski did not testify about the Fernandez event. Because Plaintiffs present no evidence that they had first hand knowledge of these events that would permit them to testify about them, they cannot now claim testimony about the events constitutes protected speech. If neither Plaintiff witnesses these events that allegedly led up to the July 29, 2000 incident, they reasonably could not have been expected to testify about them in the *Fields* case. In fact, they did not testify about them in the *Fields* case. Therefore, the Court, in its discretion, denies Plaintiffs' reconsideration motion as to the incidents leading up to the SI-2 incident. *See United States v. Gorman,* 613 F.3d 711, 720 (7th Cir. 2010) (court's balancing of probative value and prejudice is a highly discretionary assessment).

### IV. Gackowski's Eyewitness Accounts

Plaintiffs further argue that Gackowski witnessed four other incidents of excessive force that are relevant to this lawsuit. Plaintiffs, however, do not provide any citations to Gackowski's depositions in which he discussed these four incidents. Moreover, the Court found no mention of these incidences in Gackowski's *Fields* depositions and Defendants maintain that Plaintiffs did not disclose these incidents in their written discovery. Accordingly, it appears that Plaintiffs failed to disclose this information during discovery – a possible violation of the discovery rules. *See David v. Caterpillar, Inc.,* 324 F.3d 851, 856-57 (7th Cir. 2003). In any event, the Court will address each incident propounded by Plaintiffs.

#### A. 2001 or 2002 E-block Incident

Gackowski maintains that in late 2001 and early 2002, he, along with other correctional officers,

responded to an "all available" call in E-block in response to an inmate fight. After the correctional officers restored order, Gackowski witnessed Defendant Coffey and another correctional officer, who is not a Defendant to this lawsuit, beat inmates who were already injured. Moreover, Gackowski contends that Defendants Andrews and Byrne watched this beating without making an effort to stop it. Gackowski then walked out in disgust after which Chief Villanueva, another non-Defendant in this lawsuit, asked him where he was going to which Gackowski responded in a sarcastic manner that it looked like everything was under control.

This testimony concerns the conduct of individuals who are not Defendants in this lawsuit and people who were not defendants in the *Fields* matter. It is so unspecific, that the Court would be hard-pressed to conclude that the evidence is sufficient to support a jury finding that Defendants committed these similar acts. Finally, without more details of the incident, what probative value this evidence has is substantially outweighed by the real risk that the jury would be confused by this evidence and be distracted from the central issue in this lawsuit. *See Alayeto,* 628 F.3d at 922. The Court therefore denies Plaintiffs' motion to reconsider in this respect.

### B. 2001 or 2002 Fermaint Pump Room Incident

In another incident in late 2001 or early 2002, Gackowski asserts that he witnessed Defendant Fermaint and two other officers beating two inmates as they lay face down on the floor of the Post 78 pump room. This is all the information that Plaintiffs provide the Court on this incident. Without the names of the inmates and other correctional officers, more details of the incident, and a more specific date, Plaintiffs have not demonstrated how this testimony could be anything but impermissible propensity evidence. *See, e.g., Anderson v. City of Chicago,* 09 C 2311, 2010 WL 4514828, at *2 (N.D. Ill. Nov. 2, 2010). Further, Plaintiffs argument that Gackowski could have testified about this in his *Fields* depositions, but he did not, does not save the day. Thus, the Court denies Plaintiffs' motion to reconsider as to this pump room incident.

### C. 2001 or 2002 D-1Tier Incident

Next, Plaintiffs contend that in late 2001 or early 2002, Gackowski was working his assignment when Byrne ordered him to D-1 – the workers tier. There, Gackowski saw three officers, that he does not name, slap an inmate and call the inmate a bitch. According to Gackowski, Byrne watched this mistreatment and laughed. Gackowski apparently shook his head in disgust and walked away. This testimony was not part of the *Fields* litigation.

Furthermore, there is no information about the specific time, correctional officers, or inmate's name. *See Anderson,* 2010 WL 4514828, at *2. And, even if this evidence were permissible, any such evidence would have "the impermissible side effect of allowing the jury to infer propensity" and decide the case "on an improper basis rather than on the evidence presented." *United States v. Conner* 583 F.3d 1011, 1023, 1025 (7th Cir. 2009). The Court denies Plaintiffs' reconsideration motion as to this incident.

### D. 2002 Post 78 Pump Room Incident

In early 2002, Plaintiffs contend that both Fairley and Gackowski were present in the Post 78 pump room when Byrne slapped a handcuffed inmate. According to Plaintiffs, there had been a fight between two inmates in a classroom near Post 78 and one of the inmates had been taken to the pump room and handcuffed to a pole. Further, Plaintiffs maintain that the inmate complained about being cuffed to the pole after which Byrne slapped him. The inmate then said: "You can't just hit me like that." Thereafter, Byrne said he could kill the inmate and get away with it as long as his paper work was straight. This event was not part of the *Fields* case, including the allegations in the complaint. As such, it is not protected speech.

Further, because Plaintiffs did not disclose this incident as potential testimony, Byrne did not have an opportunity to speak to these allegations in his deposition, which in itself is prejudicial. Under the circumstances, the limited probative value of this evidence is outweighed by juror confusion and unnecessary delay, especially because the parties have not conducted discovery concerning this matter. *See Rogers,* 587 F.3d at 822 ("Rule 403 [] gives a court discretion to exclude evidence that is problematic because it will be difficult to confine it to proper bounds."). The Court denies Plaintiffs' motion for reconsideration regarding the 2002 Post 78 pump room incident involving Byrne.

## V.     June 2, 2002 Vennis McCall Incident

On June 7, 2002, Fairley, along with Defendant Coffey and another correctional officer who is no longer a Defendant to this lawsuit, Gabriel Ochoa, subdued a hostile SI-2 inmate, Vennis McCall, and returned him to his cell. At the end of the shift, Ochoa bragged about how he and Coffey had beaten McCall to subdue him to other correctional officers. Fairley then told the other officers that Coffey and Ochoa did not beat up McCall to subdue him, but that he was the one who subdued McCall, and that McCall was not resisting when the officers did punch him. (R. 1230-1, Ex. A, 12/21/04 Fairley Dep., at 756-58.) Again, this incident was not part of the *Field* complaint or trial.

After reviewing Fairley's statements in the context of his deposition testimony, this testimony is clearly code of silence testimony in which he opines that Ochoa's and Coffey's conduct concerned the enforcement of the commonly known rule that you do not "rat out" other officers and that you "stick together as a group." This evidence is no longer relevant to this lawsuit. *See Fairley,* 578 F.3d at 522-25. Also, Plaintiffs have failed to fulfill the four elements in the Seventh Circuit's 404(b) propensity evidence test regarding this incident. *See Courtright,* 632 F.3d at 369. More specifically, Plaintiffs have failed to establish that these incidents are similar enough and close enough in time, especially because Coffey and Ochoa were not Defendants in *Fields*, Ochoa is not a Defendant in this lawsuit, and this incident took place two years after the SI-2 incident. Last, because this testimony appears to be an attempt to use propensity evidence to dirty up Defendant Coffey, its negligible probative value is substantially outweighed by unfair prejudice. *See Courtright,* 632 F.3d at 370 ("a Rule 404(b) prejudice determination also evaluates whether the evidence will be improperly used by the jury as proof of propensity."). Therefore, the Court denies Plaintiffs' reconsideration motion as to the McCall incident.

## CONCLUSION

Plaintiffs attempts to recharacterize testimony about other excessive force events at the CCDOC as "protected speech" fails for the reasons set forth above. Furthermore, the Court cannot conclude that Defendants knew or should have know that Plaintiffs would testify to any of this conduct in the *Fields* litigation – and in fact, there is no evidence that Plaintiffs testified to any of these events at the *Fields* trial. Plaintiffs' motion is denied.